*In re* JOHN PATES.—(TERRY B. BRELJE, Plaintiff-Appellee, *v.*
JOHN PATES, Respondent-Appellant.)

Fifth District    No. 80-469

Opinion filed August 25, 1981.—Rehearing denied September 25, 1981.

Ray McKoski, of Legal Advocacy Services, and Jeff M. Plesko, of Guardianship and Advocacy Commission, both of Anna, for appellant.

Darrell Williamson, Assistant State's Attorney, of Chester, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

On June 6, 1980, a petition for the involuntary commitment of respondent was filed in the circuit court of Randolph County pursuant to the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*). Certificates by Diosdado Tabilon, M.D., staff psychiatrist, and T. J. Fitzgerald, a psychologist, were attached to the petition. Also attached was a proposed plan of treatment dated May 8, 1980. Staff members present with respondent at the time his plan of treatment was discussed with him were T. J. Fitzgerald, A. Calabio, M.D., Stan Cowan, Mental Health Administrator, G. Liefer, registered nurse, M. Martinie and B. Summers. James Moore, supervising psychologist, was involved in formulating a plan of treatment for respondent. On June 18, 1980, a hearing was held, and the court appointed counsel to represent appellant. Following the hearing the court found that respondent is a person subject to involuntary admission and ordered him hospitalized by the Department of Mental Health and Developmental Disabilities.

On September 25, 1980, respondent filed a petition for discharge in which he stated: "I honestly feel that I'm no longer in need of mental health treatment. I also feel strongly I am not a danger to myself or others. And I do not feel that the psychiatrist's report was accurate." On October 1, 1981, counsel for respondent made a motion for the appointment of an "impartial medical expert" pursuant to section 3—804 of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—804).

At the start of the hearing on respondent's petition for discharge the court denied the respondent's motion. Respondent, aged 21, testified that he sought discharge, because he feels that he was well, no longer in need of mental treatment and not a danger to anyone. He had been committed to the Department since 1977 and planned to live with his family in Chicago if released. He had talked to his "Auntie" on the prior Monday, and she said he could live with her. Respondent did not have any source of income but intended to get a job if released. Respondent further testified that he had once been examined by Dr. Cuneo and opined that Dr. Cuneo had rendered a fair opinion.

Dan Cuneo, a licensed psychologist, is employed by the Chester Mental Health Center. Dr. Cuneo also has a private practice and teaches at the University of Missouri, St. Louis, and Belleville Area College. Dr. Cuneo examined respondent on September 30, 1981. He testified that respondent's symptoms of mental illness are loose and tangential thinking, experiences of auditory hallucinations, poor impulse control and acting out if upset or frustrated. On September 28, respondent was placed in restraints because he was trying to injure people. On September 29, 1980, he was put in seclusion to protect himself and others. Respondent stated

that he believes that the auditory hallucinations are the voices of God or the devil and that he must follow their commands. Dr. Cuneo opined that respondent is a schizophrenic paranoid type and that he is a danger to himself and others. Respondent was receiving lithium injections. Dr. Cuneo stated that if respondent took the injections unsupervised he could have lithium poisoning and that he could not meet his basic needs if released. Respondent has been continuously hospitalized since May 25, 1976, and Dr. Cuneo concluded by recommending his continued hospitalization at the Chester Mental Health Center.

Following the October 1, 1980, hearing the court found that respondent should continue to be subject to involuntary admission and ordered that he be hospitalized by the Department of Mental Health and Developmental Disabilities. Respondent's sole claim on appeal is that he was denied due process and statutory rights when the trial court refused his request for an independent psychiatric or other expert examination to aid in the preparation for a hearing on his petition for discharge.

Section 3—804 of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—804) provides:

> "The respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist or other expert of his choice. If the respondent is unable to obtain an examination, he may request that the court order an examination to be made by an impartial medical expert pursuant to Supreme Court Rules or by a qualified examiner, clinical psychologist or other expert. Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule."

The foregoing statute does not exclude an expert employed by the State. All that is required is that he be impartial. Upon consideration of the facts presented in the record we find that respondent was provided with an impartial psychologist by the appointment of Dr. Cuneo. Dr. Cuneo is not a partisan of the State, though his fee was paid by the State, any more than assigned counsel for the defense is beholden to the prosecution merely because he is compensated by the State. Each is given a purely professional job to do—counsel to represent the defendant to the best of his ability, the psychologist impartially to examine into and report upon the mental condition of the respondent.

■■ ■ The fact is that psychiatrists and psychologists are professional people, not advocates. Nevertheless, when they express views which are not in accord with those harbored by the confined patient or his counsel, there is a tendency to regard such an expert as an adversary or a partisan of the State. It is improper to suggest that government psychiatrists or psychologists are not impartial in this context. (*Procter v. Harris* (D.C.

Cir. 1969), 413 F.2d 383; *Swanson v. State* (1970), 9 Md. App. 594, 267 A.2d 270; *State ex rel. Hoover v. Bloom* (Mo. 1971), 461 S.W.2d 841.) A psychologist who expresses his professional opinion in court is not a partisan but is, in effect, the court's witness. (See *Massey v. District Court* (1973), 180 Colo. 359, Colo. 506 P.2d 128.) All he need do is render his best judgment and make all relevant information available both to the court and the defense. *In re Gannon* (1973), 123 N.J. Super. 104, 301 A.2d 493.

■■ Where there has been no challenge of the professional standing of the expert whose examination and report has been furnished at State expense and no question has been raised as to his competence, his impartiality, or the thoroughness of his examination of the respondent, there is no further obligation on the part of the State to supply defense counsel with funds to hire expert witnesses for the defense in order to offer an opinion that the respondent is not in need of involuntary admission and treatment by the Department of Mental Health. *Wilkins v. State* (1973), 16 Md. App. 587, 300 A.2d 411; *Gaither v. State* (1971), 13 Md. App. 245, 282 A.2d 535; *Swanson v. State*.

In the case at bar, respondent did not allege that Dr. Cuneo was not impartial, nor does the record indicate Dr. Cuneo was not impartial. Dr. Cuneo neither provided a certificate for respondent's involuntary admission nor helped prepare a plan of treatment. Dr. Cuneo is not a full-time employee of the Department, and the record indicates that little of his professional time is spent as an employee of the Department due to his private practice and teaching activities.

■■ For the foregoing reasons, we find respondent has had the benefit of an impartial psychologist, and the judgment of the circuit court of Randolph County is affirmed.

Section 3—804 of the Mental Health and Developmental Disabilities Code is a progressive and enlightened piece of legislation. The section concludes with this sentence:

> "Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule." (Ill. Rev. Stat. 1979, ch. 91½, par. 3—804.)

Unfortunately, the legislature has not seen fit to appropriate funds with which to implement the full utilization of that statute, and consequently there is no Supreme Court Rule addressing the statutory purpose. It seems singularly unfair to press upon those Illinois counties that are the situs of a facility maintained by the State Department of Mental Health the considerable burden of paying the cost of an expert as described in the statute for every patient confined in an institution in their counties. It is common knowledge that petitions for discharge are filed by practically all patients with such repetition as the applicable statutes allow. The expense of pro-

viding funds to implement the rights granted by the statute would not only wreak fiscal havoc in the counties in which such institutions are located but would place a severe drain on the State itself. But it is the province of the legislature to pronounce the statute ill-advised and to repeal it; the courts may not intrude. We can only say that until the statute is either funded or repealed by the legislature, we can but wrestle with the paradox it creates, as we have done in this case.

Affirmed.

KASSERMAN, P. J., and KARNS, J., concur.