*In re* RICHARD WILLIAMS (The People of the State of Illinois, Petitioner-Appellee, v. Richard Williams, Respondent-Appellant).

Third District   No. 3—84—0546

Opinion filed May 14, 1985.

Roger Derstine and Sandra Kopels, both of Guardianship and Advocacy Commission, of Tinley Park, for appellant.

William Herzog, State's Attorney, of Kankakee (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

On July 17, 1984, the circuit court of Kankakee County entered an order finding the appellant, Richard Williams, to be a person subject to involuntary admission and hospitalization in the Department of Mental Health and Developmental Disabilities. On appeal, the appellant challenges the sufficiency of the evidence and argues that the court erred in denying his request for an independent psychiatric examination and a change of venue.

In order to find a person subject to involuntary admission, it must be established by clear and convincing evidence that the person is a definite danger to himself or society. (*In re Stephenson* (1977), 67 Ill. 2d 544.) Courts are not required to wait until someone is actually harmed before ordering hospitalization. The order will be affirmed

where there is a reasonable expectation that the respondent will engage in dangerous conduct. *In re Haber* (1979), 78 Ill. App. 3d 1120; *In re Powell* (1980), 85 Ill. App. 3d 877.

Gerald Lee, a clinical psychologist, diagnosed the appellant as a paranoid schizophrenic. On direct examination, Mr. Lee stated that in his opinion the appellant was likely to inflict serious physical harm upon himself or others and was not a proper candidate for less restrictive placement. Mr. Lee's opinion was based upon an examination of the appellant and on reports of appellant's behavior in April and May of 1984 while appellant was a patient at Manteno Mental Health Center. Appellant had accused the staff at Manteno of putting chemicals in his blood and then withdrawing blood while appellant was asleep. The appellant also threatened the staff and accused them of spying on him and taking his money.

Thomas Johnson, the psychologist who signed the petition for involuntary admission, was called by appellant as an adverse witness. Mr. Johnson testified as to appellant's recent history of threats, attacks on other patients, and similar acts of aggression.

Finally, Dr. Noguera, the medical director of Manteno Mental Health Center, gave additional testimony about appellant's prior history. In 1971, appellant had been found not guilty by reason of insanity for the murder of his wife and was sent to the Menard maximum security mental health facility in 1979 on a charge of aggravated battery.

■ The respondent has an extensive history of violent conduct. Expert witnesses have testified that this conduct persists and is likely to occur in the future if the respondent is not hospitalized and treated. We find this evidence to be sufficient to support the court's order committing the appellant to the Department of Mental Health.

■ Next, the appellant argues that he was denied his statutory and constitutional rights when the court denied his request for an independent examination to aid in his defense of the involuntary commitment proceedings. An individual alleged to be subject to involuntary hospitalization is guaranteed all rights, benefits and privileges provided by law. Ill. Rev. Stat. 1983, ch. 91½, par. 2—100.

A respondent in a civil commitment proceeding does not have a constitutional right to an independent psychiatric examination at the State's expense. Although the United States Supreme Court has recently recognized such a right in criminal proceedings where a defendant's sanity is at issue (*Ake v. Oklahoma* (1985), 470 U.S. ___, 84 L. Ed. 2d 53, 105 S. Ct. 1087), the right has not been extended to civil cases.

In Illinois, a person alleged to be subject to involuntary admission has a statutory right to an examination by an independent psychiatrist:

"Sec. 3—804. The respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist or other expert of his choice. If the respondent is unable to obtain an examination, he may request that the court order an examination to be made by an impartial medical expert pursuant to Supreme Court Rules or by a qualified examiner, clinical psychologist or other expert. Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule." (Ill. Rev. Stat. 1983, ch. 91½, par. 3—804.)

Prior to its enactment in 1978, the proposed section 3—804 was analyzed by the Governor's Commission for Revision of the Mental Health Code. The Commission concluded that "[t]he rights to counsel and to be heard in a civil commitment proceeding will often fail to adequately protect the respondent unless he is able to secure the advice or testimony of his own examiner. Otherwise, the respondent and his lawyer will have difficulty in rebutting or exposing errors and other deficiencies in the testimony of the expert state witnesses." Report, Governor's Commission for Revision of the Mental Health Code of Illinois 60 (1976).

The evidence marshalled against a respondent by the State's experts may often seem overwhelming and irrefutable to those who have no training in medicine or psychology. The Commission's report clearly states that the purpose of section 3—804 is to aid the respondent and his attorney in the presentation of a defense. Where the respondent's liberty is at stake, the assistance of an independent expert is essential to a fair and impartial hearing.

In the present case, the trial judge denied the appellant's request for an independent examination primarily because the Illinois legislature failed to allocate funds to pay for a State appointed psychiatrist. The judge also held that the examination was not a matter of right but was within his discretion to grant or deny.

Only two cases in Illinois have discussed section 3—804. In *People v. Leppert* (1982), 105 Ill. App. 3d 514, a defendant was charged with attempt (murder) and was found not guilty by reason of insanity. During the involuntary admission hearing, the trial court, in *dicta*, described the right to an independent examination under 3—804 as an entitlement.

In *In re Pates* (1981), 99 Ill. App. 3d 847, the respondent in an involuntary admission proceeding argued that he was denied due process and statutory rights when the trial court refused his request for an independent psychiatric examination. Respondent had been examined by a psychiatrist who testified on behalf of the State. The respondent testified that he had been examined previously by the psychiatrist and thought that the doctor had rendered a fair opinion. Respondent did not challenge the unfavorable opinion rendered by the psychiatrist at the admission hearing.

On appeal, the court held that where a respondent does not challenge the impartiality or competence of the State's expert, there is no further obligation on the part of the State to supply defense counsel with funds to hire expert witnesses to offer contrary opinions as to the respondent's need for involuntary admission and treatment. The court refused to treat an independent examination pursuant to section 3—804 as an entitlement because the legislature did not appropriate funds with which to implement the statute. The court recognized the paradox created by the legislation, but stated that it would be unfair to place the burden of paying for independent experts on those counties in which mental health facilities are located. In the court's opinion, full utilization of section 3—804 would wreak fiscal havoc on such counties and place a severe drain on the State itself. The State argues that *In re Pates* controls in the present case. We disagree.

Citing cases from the State of Maryland, the court in *In re Pates* has engrafted upon section 3—804 the additional requirement that a respondent first challenge the impartiality of the State's experts before he can claim his statutory right to an independent examination. We choose not to adopt this judicially enacted condition precedent.

The fact that the legislature has failed to allocate funds for independent examinations does not permit courts to ignore the rights conferred by section 3—804. The statute provides that payment of the independent expert shall be governed by supreme court rule. Rule 215(d)(5) (87 Ill. 2d R. 215(d)(5)) provides for the compensation of a court-appointed medical expert. This is the only rule which appears to be applicable.

Also, section 3—818(b) of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—818(b)) authorizes courts to order the State to pay the cost of the proceedings from funds appropriated by the General Assembly for that purpose. Thus, the lack of funds specifically allocated to section 3—804 is no bar to its implementation. The respondent was entitled to an examination by an independent expert appointed by the court and paid for by the State. Accordingly, we reverse the judgment of

the circuit court of Kankakee County and remand for a new hearing.

■■ The respondent's final argument is that the court erred in refusing to grant his motion for a change of venue. Section 3—800(a) of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—800(a)) provides in part:

> "(a) Unless otherwise indicated, court hearings under this Chapter shall be held pursuant to this Article. *** Any party may request a change of venue or transfer to any other county because of the convenience of parties or witnesses or the condition of the respondent. The respondent may have the proceedings transferred to the County of his residence."

This action was commenced in Kankakee County while respondent was hospitalized at Manteno Mental Health Center. The court granted respondent's request for a transfer of venue to Cook County, where respondent lived prior to being hospitalized. The Cook County judge found that respondent was no longer a resident of Cook County and had no witnesses to call there. The case was returned to Kankakee County.

The Kankakee court again sent the case back to Cook County, where the court declined jurisdiction and transferred the case back to Kankakee County for the convenience of the parties and witnesses. The Kankakee court denied the respondent's third request for a change of venue, explaining that the Cook County court would find some other way to send the case back. We find no abuse of discretion.

There is nothing in the record to indicate that the respondent currently resides in Cook County or that he has Cook County witnesses to call. Furthermore, the circuit court of Cook County has specifically held that the respondent is no longer a county resident. From the record, it appears that the respondent is a patient at a mental health center in Kankakee County. Accordingly, Kankakee County is the proper forum.

The judgment of the circuit court is reversed and the cause remanded for a new hearing. The court is instructed to appoint an independent expert to conduct an examination of respondent at the State's expense.

Reversed and remanded with instructions.

BARRY and SCOTT, JJ., concur.