In re RICHARD WILLIAMS (The People of the State of Illinois, Petitioner-Appellee, v. Richard Williams, Respondent-Appellant).

Third District   No. 3—85—0205

Opinion filed January 14, 1986.

Roger Derstine and Sandra Kopels, both of Guardianship & Advocacy Commission, of Tinley Park, for appellant.

William E. Herzog, State's Attorney, of Kankakee (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Richard Williams brings this appeal from an order entered on February 28, 1985, by the circuit court of Kankakee County finding him to be subject to involuntary admission and hospitalization in the Department of Mental Health for a period not to exceed 60 days. Williams has a history of 15 admissions and/or transfers to the Department of Mental Health since 1971 with his last admission occurring in 1983 when he refused to leave prison upon being granted parole.

Williams had previously been found subject to involuntary admission for a 60-day period in an order entered on July 17, 1984. Williams appealed from the July order, and this court reversed and remanded for a new hearing upon the ground that Williams, who is indigent, was entitled to an independent psychiatric examination at State expense under section 3—804 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—804). (*In re Williams* (1985), 133 Ill. App. 3d 232, 478 N.E.2d 867.) Our decision in that case was filed on May 14, 1985, subsequent to the trial and order in the instant case.

The record on appeal indicates the slow progress of this case through the circuit court. This petition seeking involuntary admission of Williams was filed on September 10, 1984. On September 11, 1984, the case was called for hearing and continued until September 18 on the motion of the court. On September 18, Williams requested a jury trial and an independent psychiatric examination. At the request of Williams' counsel, the case was continued to September 25 at which time the court denied Williams' request for an independent examination by a psychiatric expert and ordered the cause to be placed on the jury calendar. On October 3, the court set the case for jury trial on October 22. On October 26, on the court's motion, the case was continued to December 10. On December 18, Williams filed a motion to dismiss for want of a timely hearing. The court denied the motion and advised the parties that the matter could be set for trial on December 19. Williams' counsel was not available for trial on that date, and on December 19, the court continued the case on its own motion to January 14, 1985. That day the case was called and again continued on the court's motion, this time for lack of a courtroom large enough for a jury trial. The jury trial was reset for February 25, 1985. On February 22, 1985, the court denied another motion for dismissal, and the jury trial commenced that same day—5½ months after the petition had been filed.

The first witness called by the State was Dr. Paul Finkel, a clinical psychologist at Manteno, who stated that Williams was a very

paranoid schizophrenic of the type characterized by intense delusions of persecution who would be a danger to others when his paranoid behavior erupts. Dr. Finkel indicated that Williams had been even more disturbed during the summer of 1984 than he was in February 1985 and had previously made three or four attempts at suicide. The doctor noted that Williams expresses his anger by threatening to kill and that he sometimes needs restraints. He often refuses to take the medicine prescribed for him.

Also testifying from the hospital were a staff psychiatrist and a ward psychologist, both of whom indicated that Williams was paranoid and had delusions that the Cook County State's Attorney and the United States Attorney were plotting with his ex-wife to get his insurance money. There was testimony that Williams believes that others control his body, that crystals of lithium have been implanted in his blood so that the F.B.I. can manipulate his body functions by means of a neurotransmitter, and that if Williams were released, he would "become a very serious danger to others as he consistently has in the past." Williams testified in his own behalf, stating that he had been confined since 1979 in both the Department of Corrections and the Department of Mental Health. Williams stated that he had had a "transmitting substance" injected into his blood by Red Cross personnel once when he donated blood, and he described the transmitters that were in his blood. He said that he suffers from physical illness, not mental, and he insisted that he is not a violent person. Williams called no other witnesses. The jury found Williams subject to involuntary admission, and on February 28 the court ordered Williams confined for a further period not to exceed 60 days.

Williams seeks a reversal of the commitment order on three grounds: (1) that he was denied his right to an independent examination by an expert; (2) that he was denied his right to a prompt hearing; and (3) that the finding of the jury was contrary to the evidence.

Although not necessary to our opinion, we want to state that we would affirm as to the third issue since it is clear from the record that the evidence was sufficient to support the verdict and order of commitment. The expert testimony Williams would become dangerous if released from an institutional environment was unanimous and was not contradicted. Williams argues that there was no evidence of violent acts occurring since the previous hearing, but there was evidence that Williams had threatened violence, and Williams' own testimony demonstrates his paranoia and irrationality.

However, the determinative issue is the first one raised by Williams. As we held in *In re Williams* (1985), 133 Ill. App. 3d 232, 478

N.E.2d 867, Williams is entitled to an examination by an independent psychiatrist appointed by the court and paid for by the State pursuant to section 3—804 of the Mental Health and Developmental Disabilities Code. The failure to provide for such an examination in this proceeding is just as much reversible error as it was to disallow the same request in the earlier proceeding. Accordingly, the February 28, 1985, order of the circuit court finding Williams subject to involuntary hospitalization must be reversed.

Williams argues that this cause should not be remanded for a new hearing as was done in the previous appeal, but rather that the order should be simply reversed on the ground that he was denied his statutory and due process rights to a timely hearing. He contends that an outright reversal is the only remedy for a denial of the right to a timely hearing. The Mental Health Code specifies that the court shall set a hearing on the petition to be held within five working days after the receipt of the second certificate or after the respondent is admitted to a mental health facility, whichever is earlier. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—706.) Section 3—800(b) provides that, if the court grants a continuance on its own motion or upon the motion of one of the parties, the respondent may continue to be detained but not for more than 15 days except to the extent that continuances are requested by respondent. The State does not deny that Williams was detained 5½ months and that the only continuance requested by Williams was one for seven days. Clearly, as the trial court recognized, the delay was a flagrant violation of Williams' rights. The court, however, observed that there was no suitable remedy under the circumstances which would adequately protect the public interest as well as Williams' rights. It is a matter of public record that Williams had been found not guilty by reason of insanity for the murder of his wife in 1971 and that he had been sent to the Menard maximum security mental health facility in 1979 on a charge of aggravated battery. The trial court could not help but be concerned for the possible danger to others if Williams were released inadvisedly.

The State argues that Williams had two remedies available to him: he could have sought a writ of *habeas corpus* or he could have petitioned for discharge under section 3—900 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, par. 3—900). Section 3—900 authorizes a petition for discharge in any case where the person has been hospitalized by virtue of a court order under the Mental Health and Developmental Disabilities Code. That remedy is not available to a patient who is hospitalized prior to a hearing and court order. We agree that *habeas corpus* was a possible

remedy in this case. Section 3—905 of the Mental Health and Developmental Disabilities Code expressly states: "Nothing in this Chapter shall deprive any person of the benefits of relief by habeas corpus." However, the availability of *habeas corpus* does not prevent Williams from seeking to correct trial court error by means of appellate review instead of by writ of *habeas corpus*. In other words, the two remedies are not mutually exclusive.

This case presents an additional problem because of the overlapping of the various petitions filed by the State. Section 3—813 of the Mental Health and Developmental Disabilities Code provides that the first order of hospitalization shall be for no more than 60 days, and if the director of the facility believes that the patient continues to be subject to involuntary admission, a second petition may be filed, hearing held, and an order of a second period of hospitalization not to exceed 60 days may be entered. Thereafter, additional periods of treatment of 180 days may be sought as long as the patient continues to be subject to involuntary admission.

After the notice of appeal was filed in this cause and shortly before the 60-day period had expired, the State filed a third petition for involuntary admission against Williams. We have been advised that this third petition is still pending in the circuit court. Additionally, the hearing after remand on the first petition has been held, and on October 17, 1985, Williams was again found to be subject to involuntary admission. He has filed an appeal from *that* order with this court. Consequently, Williams is now confined pursuant to the October 17, 1985, order as well as pursuant to the order which is the subject of this appeal. Since the validity of the commitment order under the first petition has not yet been finally determined and since a third petition is pending, no useful purpose would be served by remand of the instant cause. Once Williams' rights under the first petition are settled, the State can proceed with a hearing under the third petition which is pending in the circuit court.

We want to state clearly that we believe the lengthy delay in bringing this case to trial was a serious abuse of Williams' rights. The circuit court simply disregarded the statutory mandate that involuntary commitment proceedings involving a person's liberty must be heard within 20 days. A special jury could have been called in order to give Williams a trial much sooner than was possible under the regular procedure. On the other hand, we are cognizant of the fact that the statutory timeline requiring a hearing (possibly before a jury) within 20 days presents serious problems for the judicial system in those counties having mental health facilities.

We urge the legislature to review the procedures which have been mandated for civil commitments and to revise those provisions which have presented the State and the courts with such difficulties in this case. We urge particular attention to the necessity of providing a means of dealing with petitions which overlap as a result of appellate review and of providing a remedy for a patient who does not receive a hearing within a reasonable time.

As indicated above, we reverse the commitment order in the cause because of the failure to authorize an independent psychiatric examination as required by the statute. We do not remand because to do so would be pointless under the circumstances of this case.

Reversed.

SCOTT and WOMBACHER, JJ., concur.