*In re* JUDITH KATZ (The People of the State of Illinois, Petitioner-Appellee, v. Judith Katz, Respondent-Appellant).

Third District    No. 3—94—0070

Opinion filed November 16, 1994.—Rehearing denied December 22, 1994.

Melissa McGrath, of Guardianship & Advocacy Commission, of Peoria, and Jeff Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On August 25, 1993, following a hearing, the circuit court of Peoria County found respondent Judith Katz to be a person subject to involuntary admission to a mental health facility pursuant to section 1—119(2) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—119(2) (West 1992)). The court ordered respondent be involuntarily admitted to the Department of Mental Health and Developmental Disabilities (Department) for a period not exceeding 180 days. (405 ILCS 5/3—813 (West 1992).) On December 7, 1993, prior to the expiration of the 180-day commitment period, respondent filed a petition for discharge from the Zeller Mental Health

Center (Zeller) pursuant to section 3—900 of the Code (405 ILCS 5/3—900 (West 1992)).

On December 8, 1993, the circuit court entered an order denying respondent's petition for discharge. Respondent appeals, contending (1) the court erred in denying her petition for discharge when she presented an uncontroverted *prima facie* case for discharge and there was no evidence that hospitalization was the least restrictive treatment setting; (2) the court erred in denying her request for a continuance to obtain an independent examination by a medical expert; and (3) she received ineffective assistance of counsel. We hold that plaintiff failed to make a *prima facie* case for discharge but the court did err in denying her request in regard to an independent examination. We need not pass upon the effectiveness of counsel.

The nature of our disposition in this case has been complicated because the record shows that respondent was discharged on February 23, 1994. As respondent did not establish even a *prima facie* case, we cannot hold that she was entitled to a discharge. On the other hand, we cannot uphold the order that was entered because we conclude she was entitled to the independent psychiatric examination which she was denied and which might have enabled her to prove she was entitled to a discharge. Normally, error of this nature would entitle a respondent to a new hearing but that would be a useless exercise after she has been discharged.

The State argues that we should dismiss the appeal as being moot because of the discharge. However, the mootness doctrine is ordinarily not applicable to proceedings under the Code but may be invoked only when dismissal (1) would not have the effect of eliminating an "*entire* class of cases from appellate review" and (2) would not leave "*collateral* legal consequences which survive the expiration of the order under review." (Emphasis added.) (*In re Wathan* (1982), 104 Ill. App. 3d 64, 65, 432 N.E.2d 670, 671, citing *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153; see also *In re Thompson* (1991), 215 Ill. App. 3d 986, 987-88, 575 N.E.2d 975, 976.) If appeal from denial of this petition for discharge be deemed moot because of respondent's discharge, then virtually all of the class of appeals from such orders would become moot before the appeal would likely be decided because admissions to hospitalization under section 3—900 of the Code expire after 180 days and few appeals can be decided within that time frame.

Accordingly, even though retrial of the petition for discharge would be useless, we cannot dismiss this appeal as moot. Rather, we reverse the order denying the petition for discharge and remand to the circuit court with directions to dismiss the then-pending petition

for discharge as moot. In that way, any collateral consequences of the court's denial of the petition for discharge will be eliminated. Respondent will have spent an additional period in commitment, which might not have been necessary, but that is a direct, and not a collateral, consequence of the court's order. No way exists to restore that time to respondent, but she will be in the same position as if no petition for discharge had been filed.

We now turn to the merits of the appeal. The parties do not dispute that under the rule set down in *In re Smoots* (1989), 189 Ill. App. 3d 289, 291, 544 N.E.2d 1235, 1237, the procedure on a hearing on a petition pursuant to section 3—900 of the Code is as follows. First, the party seeking discharge (here respondent) has the burden of establishing a *prima facie* case for discharge. If that happens, the State then has the burden of proving by clear and convincing evidence that the petition for discharge should be denied. Here, respondent was her only witness and the State did not produce any evidence in opposition. Thus, the question presented is whether petitioner made a *prima facie* case for discharge.

Respondent testified that (1) if her petition was granted, she would return to her trailer; (2) she had an income with which she could support herself; (3) she would like to continue the hearing to consult with her attorney; (4) since she had been involuntarily committed at Zeller, the staff had been trying to discharge her but the "conditions for discharge keep going up and up and changing," so she filed the petition for discharge; (5) she admitted that she was unable to care for herself but she claimed that she was capable of hiring a care giver; (6) she had a care giver named "Marge Gosich"; and (7) she was not suicidal or dangerous.

At the hearing when respondent was admitted, the evidence indicated that because of respondent's psychosis, she was unwilling to be cared for by someone else. At the hearing on the petition for discharge, respondent did not testify that she was now willing to do so. Much of respondent's refusal to be cared for at the time of the hearing on the petition for involuntary admission centered upon her obsession about a fictitious character named Dillon who she believed wanted to kill her. None of respondent's testimony at the discharge hearing indicated that problem had been resolved. Rather, respondent's *pro se* petition for discharge indicated respondent continued to have paranoid delusions about Dillon.

▇ Respondent's contention that error resulted from the State's failure to present evidence that her commitment to Zeller was the least restrictive mode of treatment arises from the provision in section 3—810 of the Code, which requires that prior to granting a

petition for involuntary admission, the court must consider a report describing the propriety of alternative treatment settings, a social investigation of the respondent, and a preliminary treatment plan. (405 ILCS 5/3—810 (West 1992).) As we later consider in more detail, section 3—901(b) of the Code, which concerns the procedure for hearings on petitions for discharge, states that article VIII of the Code (405 ILCS 5/3—800 through 3—820 (West 1992)), of which section 3—810 is a part, governs the procedure for hearings on petitions for discharge. (405 ILCS 5/3—901(b) (West 1992).) However, no express authority exists requiring the court hearing a discharge petition to consider section 3—810 matters when no *prima facie* case is made to support the discharge petition. To require such a report in the absence of a *prima facie* case would be contrary to the format described in *Smoots*.

The circuit court properly found that no *prima facie* case had been presented. That court was not required to consider any material described in section 3—810 of the Code. The record did not indicate that respondent was entitled to a discharge. Nevertheless, as we have indicated, we conclude respondent was entitled to an examination by an independent expert which might have made a difference in respondent's proof.

In respondent's petition, she did request that the court appoint Dr. "Deors" from St. Mary's Hospital in Galesburg to examine her and asked for a continuance so that this might be accomplished. The circuit court refused. Article VIII of the Code is entitled "COURT HEARINGS," and section 3—804 of the Code, which is part of article VIII, states as follows:

> "The respondent is entitled to secure an independent examina-
> tion by a physician, qualified examiner, clinical psychologist or
> other expert of his choice. If the respondent is unable to obtain an
> examination, he may request that the court order an examination
> to be made by an impartial medical expert pursuant to Supreme
> Court Rules or by a qualified examiner, clinical psychologist or
> other expert." 405 ILCS 5/3—804 (West 1992).

As we have previously indicated, section 3—901(b) of the Code states that "[a]rticle VIII of [the Code] applies to hearings held under this Section" (405 ILCS 5/3—901(b) (West 1992)). Unlike respondent's attempt to require compliance with section 3—810 of the Code prior to a finding of a *prima facie* case for discharge, nothing in the format for the procedure for a discharge hearing negates application of section 3—804 of the Code to entitle a respondent to an examination by an independent expert before a hearing on a petition for discharge.

This court has held that in a proceeding for involuntary

admission a respondent is entitled under section 3—804 of the Code to examination "by an independent psychiatrist appointed by the court and paid for by the State" (*In re Williams* (1986), 140 Ill. App. 3d 708, 710-11, 489 N.E.2d 347, 349 (*Williams II*)). This court had made a similar holding when that case had previously been before it in *In re Williams* (1985), 133 Ill. App. 3d 232, 236, 478 N.E.2d 867, 869-70 (*Williams I*). This is in contrast to the Appellate Court for the Fifth District, which has held that the requests of section 3—804 can be met by appointment of a qualified examiner who is independent even if that examiner is an employee of the Department. *In re Barnard* (1993), 247 Ill. App. 3d 234, 247-51, 616 N.E.2d 714, 723-26.

Interestingly, in expressing concern over the cost of providing court-appointed, private, independent examiners, the *Barnard* court stated that "section 3—804 of the Code applies *with equal force to both petitions for discharge* and petitions for involuntary admission." (Emphasis added.) (*Barnard*, 247 Ill. App. 3d at 249, 616 N.E.2d at 725.) Previously, in *In re Pates* (1981), 99 Ill. App. 3d 847, 850, 426 N.E.2d 275, 278, that same court applied section 3—804 of the Code (Ill. Rev. Stat. 1979, ch. 91$^{1}$/$_{2}$, par. 3—804) to a discharge proceeding and held that the respondent's right to independent examination was satisfied by a psychologist who was employed by the Department of Corrections, as well as engaging in a private practice.

■ While this court has never passed upon the question of whether section 3—804 of the Code is applicable to discharge proceedings, we hold that it is. The statutory language so indicates and the Appellate Court for the Fifth District has so held. In both *Williams* cases, this court has recognized the great value to a respondent of having an independent examiner. (*Williams*, 133 Ill. App. 3d at 235, 478 N.E.2d at 869; *Williams*, 140 Ill. App. 3d at 711, 489 N.E.2d at 349.) We also adhere to the wisdom of the *Williams I* and *Williams II* opinions in requiring that the examiner not be an employee of the Department.

We are aware of the additional expenses that may arise by applying section 3—804 of the Code to discharge petitions when the independent examiner is not an employee of the Department. However, we note that section 3—901(c) of the Code limits a respondent to only one petition for discharge per admission unless leave of court is granted to file another such petition. (405 ILCS 5/3—901(c) (West 1992).) We do not fault the circuit court's handling of the difficult situation presented but conclude that the portions of the Code involved need clarification, and the interpretation we have given is the most reasonable one.

As we have indicated, we reverse the order denying the petition

for discharge. We then remand to the circuit court of Peoria County with directions to dismiss the then-pending petition for discharge as moot.

Reversed and remanded with directions.

KNECHT, J., concurs.

JUSTICE McCULLOUGH, concurring in part and dissenting in part:

I agree the court in *Williams II* held that a respondent is entitled to examination by an impartial examiner and also agree with the majority here that the statute applies to discharge hearings. I disagree with the proposition that the examiner cannot be employed by the State. Section 3—804 provides two methods for independent examination. First, the respondent may secure the examiner of his choice, and second, if respondent is unable to obtain an examination, she may request that the court order an examination by an impartial medical expert.

Where the appointment is by order of the court, the only requirement is that the examiner be qualified and impartial. Whether the examiner has some connection or employment with the State is not a prohibition for appointment. An examiner in such circumstances can be qualified, independent, and impartial. It is for the trial court to make this determination and, unless the evidence shows the examiner is unqualified, not independent, or not impartial, the requirements of section 3—804 have been satisfied.

In *Williams II*, the trial court denied respondent's request for an independent psychiatric examination. I do not read *Williams II* to require the examiner not to have any connection with the State.

As pointed out in *Barnard*:

" 'Dr. Cuneo is not a partisan of the State, though his fee was paid by the State, any more than assigned counsel for the defense is beholden to the prosecution merely because he is compensated by the State. Each is given a purely professional job to do—counsel to represent the defendant to the best of his ability, the psychologist impartially to examine into and report upon the mental condition of the respondent.' " *Barnard*, 247 Ill. App. 3d at 247, 616 N.E.2d at 724.

In *Barnard*, the trial court did appoint an examiner, albeit he was employed by the Department. I agree with the *Pates* and *Barnard* decisions. Examiners appointed pursuant to the statute are professional people, not advocates. A respondent who does not secure

the examiner of choice is only entitled to examination by an impartial medical expert.

I do agree the petition should be dismissed as moot.