No. 3--06--0512
(Consolidated with No. 3--06--0513)

_____

Filed June 8, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| In re JOHN N., JR., | ) | Appeal from the Circuit Court |
| a Person Asserted to be | ) | of the 10th Judicial Circuit, |
| Subject to Involuntary | ) | Peoria County, Illinois, |
| Admission and Treatment | ) | |
| | ) | |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | No. 06--MH--41 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| John N., Jr., | ) | Stephen A. Kouri & |
| | ) | Joe R. Vespa, |
| Respondent-Appellant). | ) | Judges, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the Opinion of the court:
_____

The trial court issued orders that the respondent, John N.,
Jr., was subject to emergency involuntary admission to a mental
health facility (405 ILCS 5/3--600 (West 2004)) and involuntary
administration of psychotropic medication (405 ILCS 5/2--107.1
(West 2004)). Later, the court denied the respondent's petition
for discharge (405 ILCS 5/3--900 (West 2004)). On appeal, the
respondent argues that the court erred by entering these three
orders. We affirm the court's orders concerning involuntary

admission and discharge, and reverse the involuntary administration of medication order.

FACTS

Initially, we note that this is the respondent's fifth appeal to this court concerning separate involuntary admission and involuntary administration of medication orders. In In re John N., No. 3--02--0354 (2003) (unpublished order under Supreme Court Rule 23), we reversed the trial court's involuntary administration of medication order on the basis that the order did not clearly define how two alternative medications were to be administered. In In re John N., Jr., No. 3--04--0043 (2004) (unpublished order under Supreme Court Rule 23), this court affirmed the trial court's involuntary admission and involuntary administration of medication orders.

In In re John N., 364 Ill. App. 3d 996, 848 N.E.2d 577 (2006), we reversed the trial court's orders on the basis that the version of a statute in effect at the time the emergency petition was filed required the police officer who brought the respondent to the hospital to sign the petition, which the officer had not done. Recently, in In re John N., Jr., No. 3--06--0267 (2007) (unpublished order under Supreme Court Rule 23), this court affirmed the trial court's involuntary admission order, but reversed its involuntary administration of medication order on the basis that the order failed to designate the persons authorized to

2

administer the involuntary medication (405 ILCS 5/2--107.1(a--5)(6) (West 2004)).

In the present case, on June 12, 2006, members of the Methodist Medical Center (Methodist) staff in Peoria filed petitions asking the trial court to find the respondent subject to (1) emergency involuntary admission; and (2) involuntary administration of psychotropic medication. The petition for involuntary admission alleged that the respondent was (1) reasonably expected to inflict serious physical harm upon himself or others in the near future (405 ILCS 5/1--119(1) (West 2004)); and (2) unable to provide for his basic physical needs (405 ILCS 5/1--119(2) (West 2004)). The petition contained handwritten comments that his son had found him wandering the streets. The son reported that the respondent had manic behavior and disorganized speech, and had threatened to harm strangers. The son said the respondent had driven long distances for no apparent reason. The respondent also had threatened members of the hospital staff.

The court held hearings concerning both petitions during a proceeding on June 14, 2006. At this proceeding, the trial court first considered the involuntary admission petition. Dr. Ghassan Bitar testified that the respondent had been admitted to Methodist on June 9, 2006. The respondent previously had been committed to the Singer Mental Health Center (Singer) in Rockford. The doctor did not know how much time elapsed from the time the respondent was

3

released from Singer to the date that he was admitted to Methodist. Bitar said that the respondent had recently traveled to Springfield, where he acted aggressively "in a couple of hotels or motels." Then, the respondent returned to Peoria and was aggressive toward his family. Because of the respondent's psychotic and aggressive behavior, his family called the police, who brought the respondent to the Methodist emergency room.

Bitar had observed the respondent every day beginning on the day after the respondent was admitted to the hospital. The doctor stated that the respondent was suffering from schizoaffective disorder. The respondent's speech was pressured and was sometimes difficult to understand. Bitar said the respondent became irritable "quite easily." At night, the respondent often would become manic and did not sleep well.

According to Bitar, the respondent experienced delusions, grandiose thoughts, and hallucinations. The respondent claimed to hear the voice of God, and believed that he was the son of God and that he was invincible.

The doctor noted that the respondent was refusing to take his prescribed oral psychotropic medications, except for Seroquel to aid sleep, because he believed that he did not need the medications. On a few occasions since the respondent was admitted to Methodist, Bitar had treated the respondent with injections of Haldol to calm him down. The doctor testified that the

4

respondent's mental illness impaired his ability to function and that he did not have any insight into his mental illness. As a result of his mental illness, the respondent was refusing to take psychotropic medication.

Bitar stated that the respondent would be unable to attend to activities of daily living if he was not taking his medication. The respondent had been prescribed medications for a prostate condition, stress incontinence, hypertension, and neck strain. According to Bitar, the respondent was only taking these medications erratically. The doctor said that the respondent's mental illness was preventing him from consistently taking the medications for these conditions.

Bitar stated that because of the respondent's delusions, he was unable to guard himself against the normal dangers of daily living. The doctor also said that the respondent had a history of physical aggression. The hospital staff told Bitar that the respondent had previously broken a television set. The respondent was reasonably expected to inflict serious physical harm to himself or others based on his belligerent behavior and speech.

Bitar said that he had considered less restrictive alternatives for the respondent, such as a nursing home, rather than commitment to a mental health facility. In Bitar's opinion, less restrictive alternatives were not possible because of the

respondent's erratic behavior caused by his refusal to take medication.

Angie Leary testified that she was a mental health clinician at Methodist. According to Leary, the respondent had been a patient at Methodist for approximately 90 days beginning in November 2005. Since that 90-day period, the respondent had been committed to the Department of Mental Health (DMH) on two occasions. On both occasions, the respondent had been transferred to Singer, but then was discharged within two or three weeks. Each time, within a few days of the respondent being discharged from Singer, he had been readmitted to Methodist.

The trial court found that the respondent was subject to involuntary admission. The court ordered the respondent to be committed to the DMH, but that he was not to be placed at Singer again. The court ordered the respondent to remain at Methodist until he could be placed in a facility other than Singer.

The court then proceeded directly to the hearing on the petition for involuntary administration of medication. Bitar testified concerning the basis for the petition. At the conclusion of this hearing, the court issued a written order that specified the medications and doses that should be involuntarily administered to the respondent. On one page of the order, the court authorized the medications to be given by "members of the clinical staff at Methodist Hospital and/or Dept. of Mental Health, whose license(s)

6

allows them to administer the treatment pursuant to Illinois law." On another page of the order, which specifies the doses of the medications, the order "authorizes the administration of *** medications under the supervision of Dr. Batar [sic], the Methodist Medical Center staff[,] and the Department of Human Services."

On June 27, 2006, the respondent filed his petition for discharge from Methodist. On the petition, the respondent wrote the heading, "John [N.,] JR[.] v.s. The People of This World." In the body of the petition, the respondent stated, "I proclaim thet [sic] I am the Antichrist son of God and son of man. Note: Doctor is giving me medicines that I am alleged/to."

The court held a hearing on the petition for discharge on June 28, 2006. The respondent testified that he had been at Methodist for two weeks. He asserted that he was "all right" when he arrived at Methodist and that he was allergic to the medicine he was being forced to take in the hospital.

When the respondent's attorney asked him what he meant when he wrote "son of God son of man" on the petition, the respondent replied, "Heavenly father son of the devil female." On cross-examination, the respondent contended that the only medicines he needed were Seroquel and Tylenol. He asserted that Seroquel helped him sleep. At first, he claimed that the Tylenol was for his knee, but then changed his answer to "bowel movement."

Bitar testified for the State in rebuttal. The doctor's testimony was substantially similar to his testimony regarding the petition for involuntary admission. Additionally, Bitar said that the respondent had broken a window with a chair at 3 a.m. on June 21, 2006. In Bitar's opinion, the respondent was not allergic to his prescribed medications.

After Bitar's testimony, the court asked the respondent what he meant by his statement in his petition that he was the anti-Christ. The respondent explained, "half brother of Jesus Christ." The court denied the respondent's petition for discharge. The respondent appealed from the court's involuntary admission order, involuntary administration of medication order, and order denying his petition for discharge.

ANALYSIS

I. Involuntary Admission

The respondent submits that the State failed to prove that he was subject to involuntary admission to a mental health facility.

Any adult may petition the court to involuntarily admit an individual on an emergency basis. 405 ILCS 5/3--600; 3--601 (West 2004). In order to involuntarily admit an individual, the State must show that the individual is mentally ill and that he (1) poses a reasonable risk of inflicting serious physical harm to himself or another, which may include threatening behavior or conduct that places another individual in reasonable expectation of being harmed

8

(405 ILCS 5/1--119(1) (West 2004)); or (2) is incapable of providing for his basic physical needs so as to guard himself from serious harm (405 ILCS 5/1--119(2) (West 2004)). Additionally, "the court may consider evidence of the person's repeated past pattern of specific behavior and actions related to the person's illness." 405 ILCS 5/1--119 (West 2004).

The State must prove its basis for involuntary commitment by clear and convincing evidence. 405 ILCS 5/3--808 (West 2004). "If any person is found subject to involuntary admission, the court shall consider alternative mental health facilities which are appropriate for and available to the respondent." 405 ILCS 5/3--811 (West 2004).

A trial court does not have to wait until someone has been harmed before ordering a respondent's involuntary admission. In re M.A., 293 Ill. App. 3d 995, 689 N.E.2d 138 (1997). The trial court's decision to involuntarily admit an individual will not be reversed on appeal unless it is manifestly erroneous. In re Rovelstad, 281 Ill. App. 3d 956, 667 N.E.2d 720 (1996).

In the present case, the record shows that the respondent suffers from schizoaffective disorder, which is a serious mental illness. Because of this mental illness, he was refusing to take the medications necessary to alleviate the symptoms of the mental illness. The respondent exhibited a past pattern of aggressive and threatening behavior when he was not taking his medication, such as

9

threatening motel staff members, his family, strangers, and members of the hospital staff. Such behavior showed that the respondent posed a reasonable risk of inflicting serious physical harm to himself or another because of his mental illness. The trial court was not required to wait until the respondent hurt someone else before ordering him to be involuntarily admitted. See M.A., 293 Ill. App. 3d 995, 689 N.E.2d 138.

Additionally, the record shows that the respondent was not capable of providing for his basic physical needs so as to guard himself from serious harm. His son had found him wandering the streets. His mental illness caused him to take medications erratically for other serious health problems such as a prostate condition and hypertension. The respondent's grandiose delusions and hallucinations prevented him from guarding himself against serious harm because of his belief that he was the son of God and was invincible.

The State proved by clear and convincing evidence that the respondent was mentally ill. The State also showed that because of this illness, he posed a reasonable risk of inflicting serious physical harm to himself or another. Bitar testified that no less restrictive alternative was appropriate for the respondent. The trial court's order for the respondent to be involuntarily admitted to a mental health facility was not manifestly erroneous.

II. Petition for Discharge

10

The respondent contends that the trial court erred by denying his petition for discharge.

Any person admitted to care and custody as having a mental illness on a court order may file a petition for discharge. 405 ILCS 5/3--900 (West 2004). Upon receipt of the petition, the court shall set a date for a hearing. 405 ILCS 5/4--706(a) (West 2004). If the court finds at the hearing that the client continues to meet the standard for admission, the court may continue its original order. 405 ILCS 5/4--706(b) (West 2004).

The party seeking discharge has the burden of establishing a prima facie case for discharge. In re Katz, 267 Ill. App. 3d 692, 642 N.E.2d 893 (1994). The State then has the burden of proving by clear and convincing evidence that the petition for discharge should be denied. Katz, 267 Ill. App. 3d 692, 642 N.E.2d 893. We review a court's decision concerning a petition for discharge to determine if it was against the manifest weight of the evidence. In re Commitment of Sandry, 367 Ill. App. 3d 949, 857 N.E.2d 295 (2006).

In this case, the respondent failed to establish a prima facie case for discharge. The delusional statements in the respondent's petition and in his testimony during the hearing showed that he continued to suffer from a serious mental illness. He failed to produce evidence that he was no longer a danger to himself and others, or that he was capable of providing for his basic physical

11

needs so as to guard himself from serious harm. His allegation that he was allergic to the medications that he was involuntarily taking was irrelevant to the issue of whether he continued to meet the standard for admission.

Even if the respondent had established a prima facie case for discharge, Bitar's testimony showed clearly and convincingly that the petition for discharge should be denied. Additionally, Bitar dispelled the respondent's allegation that he was allergic to his prescribed medications. The record showed that the respondent continued to meet the standard for involuntary admission. Therefore, it was not against the manifest weight of the evidence for the trial court to deny the respondent's petition for discharge.

### III. Involuntary Treatment

The respondent argues that the trial court erred by ordering that he was subject to involuntary administration of psychotropic medication. Among other things, the respondent submits that the court's order did not designate the persons authorized to administer the medication.

The trial court's involuntary administration of medication order shall designate the persons authorized to administer the involuntary treatment. 405 ILCS 5/2--107.1(a--5)(6) (West 2004). Cases concerning involuntary administration of medication require strict compliance with procedural safeguards because of the liberty

12

interests involved. In re Louis S., 361 Ill. App. 3d 774, 838 N.E.2d 226 (2005). An appellate court will reverse a trial court's order to involuntarily administer psychotropic medication only if it is manifestly erroneous. In re Dorothy W., 295 Ill. App. 3d 107, 692 N.E.2d 388 (1998).

In Jennifer H., 333 Ill. App. 3d 427, 775 N.E.2d 616 , the trial court's order stated that the psychotropic medication was to be administered by the staff of the Zeller Mental Health Center. In Jennifer H., we reversed the trial court's order for involuntary administration of medication because, among other reasons, the order did not specify the persons authorized to administer the involuntary treatment.

In In re Gloria B., 333 Ill. App. 3d 903, 776 N.E.2d 853 (2002), the trial court's order said that the involuntary medication was " 'to be administered by members of the clinical staff at Zeller Mental Health, whose license(s) allows them to administer the treatment pursuant to Illinois law.' " Gloria B., 333 Ill. App. 3d at 904, 776 N.E.2d at 855. In Gloria B., we likewise reversed the trial court's involuntary administration of medication order because the order did not designate the persons authorized to administer the involuntary treatment.

In the instant case, the first page of the trial court's order authorized the relevant staff members of Methodist and DMH to administer the medication. The second page of the order, however,

13

read literally, authorized the medication to be administered under the supervision of (1) Bitar; (2) the staff of Methodist; and (3) the Department of Human Services (DHS). The second page of the order does not say that Bitar is to supervise the members of Methodist, the DMH, and the DHS. Also, the second page does not state how it relates to the first page. Moreover, there is nothing in the order to explain the conflict between the two sets of persons authorized to administer the medications in the two pages of the order.

We find that the trial court's order in this case was substantially similar to the orders in Jennifer H. and Gloria B. Once again, the court's order in this case does not designate the persons authorized to administer the involuntary treatment. See 405 ILCS 5/2--107.1(a--5)(6) (West 2004). We cannot say that such an order strictly complies with the statute by designating the persons authorized to administer the involuntary treatment. See 405 ILCS 5/2--107.1(a--5)(6) (West 2004); Louis S., 361 Ill. App. 3d 774, 838 N.E.2d 226. Therefore, based on our previous rulings in Jennifer H. and Gloria B., we hold that the trial court's order to involuntarily administer psychotropic medication was manifestly erroneous.

We are sympathetic to the challenges faced by trial courts in attempting to follow the statutory mandate. The court must construct an order for involuntary medication that is neither so

14

narrow that it is impractical, nor so broad that it fails to comport with the demands of the statute. However, we are constrained by the plain language of the statute as written by our legislature, and by the necessity of strict compliance because of the liberty interest involved. See Louis S., 361 Ill. App. 3d 774, 838 N.E.2d 226.

We find In re Robert S., 341 Ill. App. 3d 238, 792 N.E.2d 421 (2003), rev'd in part on other grounds 213 Ill. 2d 30, 820 N.E.2d 424 (2004), to be instructive concerning a trial court order that complied with the requirements of the statute. In Robert S., the trial court's order stated that " 'ROBERT S[.] shall receive psychotropic medication to be administered by DR. NAZARENO (or designee whose license and credentials permit) at Elgin Mental Health Center for a period not to exceed 90 days.' " Robert S., 341 Ill. App. 3d at 249, 792 N.E.2d at 429. The appellate court ruled that this order complied with the requirements of section 2--107.1(a--5)(6). The Illinois Supreme Court was not asked to consider this precise issue, but it affirmed that portion of the appellate court's decision concerning the applicability of the criteria in section 2--107.1. See Robert S., 213 Ill. 2d 30, 820 N.E.2d 424.

CONCLUSION

For the foregoing reasons, we affirm the Peoria County circuit court's orders (1) that the respondent is subject to involuntary

15

admission to a mental health facility; and (2) denying the respondent's petition for discharge. We reverse the court's order for involuntary administration of psychotropic medication.

Affirmed in part and reversed in part.

SCHMIDT and WRIGHT, JJ., concurring.