NO. 4-00-0480

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of GWENDOLYN N., a ) Appeal from

Person Found Subject to Involuntary ) Circuit Court of

Medication, ) Sangamon County

THE PEOPLE OF THE STATE OF ILLINOIS, ) No. 99MH301

Petitioner-Appellee, )

) Honorable

GWENDOLYN N., ) Robert T. Hall,

Respondent-Appellant. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Respondent, Gwendolyn N., appeals from a trial court order authorizing her involuntary treatment involving psychotropic medications.

The State, through Dr. Christine Fletcher of the Andrew McFarland Mental Health Center (McFarland), petitioned the court on April 5, 2000, to begin the involuntary treatment of Gwendolyn with psychotropic medications, pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1 (West 2000)).  A hearing was held on April 28, 2000.  Dr. Fletcher was the only witness.  At the conclusion of the proceedings, the trial court authorized Gwendolyn's involuntary treatment with psychotropic medications.

I. GWENDOLYN'S MENTAL CAPACITY

Gwendolyn first contends that, pursuant to section 2-107.1(a)(4) of the Code, the State did not prove by clear and convincing evidence the factors necessary to administer involuntary treatment.  We disagree.  Dr. Fletcher diagnosed Gwendolyn with chronic paranoid schizophrenia.  Gwendolyn exhibits obsessive-compulsive behaviors whereby she "get[s repetitively] stuck" in her movements and makes bizarre, circuitous trips around the clinical unit.  This can affect her ability to eat meals and dress herself.  She can also become episodically aggressive.  We recognize that the fact of mental illness, standing alone, is not always a sufficient basis to conclude that a person lacks the capacity to make a reasoned decision regarding medical care.  However, it is also true that failure to recognize one's mental illness may be evidence that capacity is lacking.  
In re Perona
, 294 Ill. App. 3d 755, 767, 690 N.E.2d 1058, 1067 (1998).  Here, Gwendolyn refuses to acknowledge her condition.  Fletcher also testified that she attempted to discuss various medications with Gwendolyn but that Gwendolyn was not cognizant of the matter being considered or the risks and benefits associated with the various types of treatments.  Gwendolyn's failure to present any rational explanation for her refusal to take the medications may also be considered as to the question of her capacity to make reasoned decisions.  
Perona
, 294 Ill. App. 3d at 767, 690 N.E.2d at 1067.

The trial court heard detailed testimony from Dr. Fletcher regarding Gwendolyn's psychological condition as it relates to the statutory factors outlined in section 2-107.1(a)(4).  405 ILCS 5/2-107.1(a)(4) (West 1998).  We find that the State met its evidentiary burden at trial.  

II. THE SCOPE AND SUFFICIENCY OF THE TRIAL COURT'S JUDGMENT

Once the trial court finds that the prerequisites to involuntary treatment have been proved, it must set forth a detailed order, establishing the type and scope of treatment that is authorized.  Since December 1, 1997, section 2-107.1(a)(6) of the Code requires:

"An order issued under this subsection (a) shall designate the persons authorized to administer the authorized involuntary treatment under the standards and procedures of this subsection (a).  Those persons shall have complete discretion not to administer any treatment authorized under this [s]ection.  The order shall also specify the medications and the anticipated range of dosages that have been authorized."  405 ILCS 5/2-107.1(a)(6) (West 1998).

Prior to December 1, 1997, the statute did not require that the order designate the medications to be administered.  
In re Barry B.
, 295 Ill. App. 3d 1080, 1088, 693 N.E.2d 882, 887 (1998).  However, even then, the court noted:

"[B]ecause of the substantial liberty 

interests involved in the involuntary ad-

ministration of psychotropic medication, we 

believe that the better practice by the 

trial court would be to include the precise 

medications *** to be administered in its 

order granting a petition for involuntary 

medication.  This will ensure that the pro-

vider of medical care has strict guidance 

for the treatment of a patient who is to 

receive psychotropic medication involuntarily."

Barry B.
, 295 Ill. App. 3d at 1088, 693 N.E.2d 

at 887.

Here, the trial court used a fill-in-the-blanks-style form order, stating that "Gwendolyn [N.] shall receive psychotropic medication to be administered by members of the clinical staff at [McFarland], whose licenses allow them to administer psychotropic drugs pursuant to Illinois law."  The form order cites the 1990 version of section 2-107.1 and appears to have been created in 1991.  Clearly, the form order was not updated to comply with the 1997 amendments to section 2-107.1. 

Gwendolyn argues this order is unlawful and overbroad because it fails to (1) specify the medications authorized, (2) specify the anticipated dosages for each medication authorized, and (3) identify the individuals authorized to administer such medications.  Gwendolyn is correct.  Neither the trial court's oral statements at the conclusion of trial nor the written order entered complies with the requirements of section 2-107.1(a)(6).  405 ILCS 5/2-107.1(a)(6) (West 1998).  However, we must determine whether the inadequacy of the order requires reversal.

We have previously held that, although the trial court order violated section 2-107.1(a)(6), reversal was not warranted because (1) respondent failed to object to the alleged errors at the trial level, (2) the evidence presented showed that respondent's attending physician was intimately familiar with respondent's treatment protocol, and (3) respondent did not contend that he was prejudiced by the omissions in the court's order.  
In re Miller
, 301 Ill. App. 3d 1060, 1072, 705 N.E.2d 144, 152 (1998).

Here, Gwendolyn failed to object to the order in the trial court.  Further, Dr. Fletcher's testimony demonstrated extensive familiarity with Gwendolyn's treatment protocol.  Unlike the respondent in 
Miller
, however, Gwendolyn has presented arguments that her rights have been compromised and she was prejudiced by the order that failed to comply with the Code requirements.  We agree.

The State's petition requested leave to administer six different medications:  Haldol, Cogentin, Lorazepam, Zyprexa, Risperidone, and Zoloft.  Dr. Fletcher testified that these medications would not be administered simultaneously.  Rather, combinations of these medications present alternative courses of treatment. 
 Dr. Fletcher contemplated three successive "courses" of alternative treatment for Gwendolyn, involving various combinations of the medications.

Gwendolyn has taken four of the six suggested medications in the past, with only slight side effects.  However, she has experienced nervousness when taking Haldol (a common side effect that is counteracted with Cogentin).  Thus, Dr. Fletcher wants permission to administer Zyprexa or Risperidone, newer drugs that have a similar impact to Haldol, with fewer side effects.  While these drugs have fewer side effects, Dr. Fletcher admitted that psychotropic medications do have side effects, the most severe of which is death.

Dr. Fletcher testified that she did not expect to return to court to request permission to proceed from her first course of treatment, to the second course, 
et
 
cetera
.  Rather, she wanted "latitude" to exercise her medical judgement in determining which combination of the antipsychotic medications worked best for Gwendolyn.  The trial court gave Dr. Fletcher that latitude.  At the conclusion of the hearing, the trial court stated:  "for a period of 90 days, I'm substituting my judgment for [Gwendolyn's], and certainly Dr. Fletcher's judgment for [Gwendolyn's], and hopefully this will do her a ton of good."

Gwendolyn asserts that under the existing order, Dr. Fletcher and McFarland have carte blanche authority to involuntarily administer any drug, in any dose, essentially by any person.  Further, the various treatment alternatives outlined at the hearing are not subject to court oversight and may be administered based solely on the judgment of Dr. Fletcher and McFarland staff.  Gwendolyn's main concern is that with no court oversight, there will be no cost-benefit analysis to ensure that the benefits of the particular combination of medications outweigh the potential harm.  405 ILCS 5/2-107.1(a)(4)(D) (West 1998).

The State basically sought permission for Dr. Fletcher to "experiment" with varying substances until an optimal combination was found.  That suggestion is not entirely novel.  In 
In re Kness
, 277 Ill. App. 3d 711, 720, 661 N.E.2d 394, 400 (1996), for example the State argued that the treating physician "should not be limited to the use of one drug but should be able to switch respondent's medications based upon the respondent's reactions to the medications."  The appellate court found that the argument had some "practical appeal" but ultimately rejected it on the basis that to do so hampers the trial court's ability to undertake a meaningful comparison of the benefits of the medication to the side effects the respondent might suffer.  
Kness
, 277 Ill. App. 3d at 720, 661 N.E.2d at 400.

The trial court's comments here indicate that it was willing to trust Dr. Fletcher's professional judgment in determining when and under what circumstances Gwendolyn's medications should be alternated.  Neither the trial court's oral statements nor its written order establishes the parameters of allowed treatment.  While we, as did the court in 
Kness
, understand the practical appeal of a system entrusting treatment discretion to physicians, we too conclude that it would be difficult to square that with the Code's requirement to balance the harm and benefits of treatment.  405 ILCS 5/2-107.1(a)(4)(D) (West 1998). 

While we do not doubt that the trial court and Dr. Fletcher have only the best of intentions for Gwendolyn, the order here impinges upon Gwendolyn's liberty interests.  When analyzing section 2-107.1 and the right to refuse medical treatment, the Supreme Court of Illinois noted its concerns with the involuntary administration of psychotropic drugs.  One of the concerns was that "psychotropic substances may be misused by medical personnel, and subverted to the objectives of patient control rather than patient treatment."  
In re C.E.
, 161 Ill. 2d 200, 215, 641 N.E.2d 345, 353 (1994).  As a protection against these potential abuses, section 2-107.1 requires court approval of involuntary treatment.  This requirement promotes the State's "legitimate 
parens
 
patriae
 interest in furthering the treatment of those who are mentally ill *** when the patient is not capable of making a sound decision in his own behalf."  
C.E.
, 161 Ill. 2d at 217, 641 N.E.2d at 353.  These statutory safeguards serve many purposes, one of which is to ensure "that the medication will be used for therapeutic purposes and will not be misapplied as a means to discipline or 'manage' the recipient."  
C.E.
, 161 Ill. 2d at 219, 641 N.E.2d at 354.  Here, however, the combination of the deficient order and lack of specificity of the court's oral ruling fails to ensure the proper use of psychotropic medications with respect to Gwendolyn.  The trial court order has prejudiced Gwendolyn's liberty interests and requires reversal. 

We should make clear that we are not suggesting the trial court must develop a course of treatment and then dictate that course to the treating physician.  That would constitute role reversal.  The duty always remains with the State and the treating physician.  That duty is to 
educate
 the court sufficiently to allow the court to make an 
informed
 judgment in its capacity as 
parens
 
patriae
.  That simply did not take place here.  Similarly, the physician may feel that the patient's case necessitates alternate treatment programs.  If so, the doctor must then explain each separate proposed course, including the benefits and risks inherent in each.  This is no different than one would expect in any other context.  So informed, the court may then decide to authorize the alternate courses or decide that a "wait and see" approach should be adopted, based upon the inherent risks.  Again, these decisions are no different than those made by other patients and their families throughout our State on a daily basis.

Because the order subjecting Gwendolyn to involuntary treatment did not specify the medications authorized, did not specify anticipated authorized dosages, and did not specify the individuals authorized to administer such treatment(s), we reverse the trial court's judgment and remand the cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STEIGMANN, P.J., and TURNER, J., concur.