No. 3--01--0938 _________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2002

IN THE MATTER OF EMMETT J.,     )  Appeal from the Circuit Court

                                )  of the 10th Judicial Circuit,

Asserted to be a Person    )  Peoria County, Illinois

Subject to Involuntary     ) 

Admission and              )       

     Involuntary Treatment      ) 

            ) 

(The People of the State       )

of Illinois,  )

  )

Petitioner-Appellee,  )  No. 01--MH--252

  ) 

v.  )

  )

Emmett J.,       ) Honorable

                 )  Thomas Ebel

Respondent-Appellant).     )  Judge, Presiding

________________________________________________________________

JUSTICE HOLDRIDGE delivered the opinion of the court:

________________________________________________________________

The respondent, Emmett J., appeals from orders of the circuit court involuntarily admitting him to a mental health facility and subjecting him to involuntary treatment.  Respondent contends (1) the State did not establish by clear and convincing evidence that involuntary admission was necessary; (2) hospitalization was not the least restrictive alternative; and (3) the trial court erred in authorizing involuntary treatment.  We affirm in part and reverse in part.

FACTS

The State filed a petition seeking commitment of respondent to a hospital.  The State also filed a separate petition in which it sought the authority to involuntarily administer psychotropic medication to respondent in the course of his treatment.

At the hearing, respondent stated he wanted to represent himself, claiming he was an attorney and Oxford graduate.  Respondent further stated that he had been a "judge of the Tenth" and a physician.  The court denied respondent’s request to represent himself.

Dr. Pratapkumar Attaluri testified he was respondent’s treating psychiatrist.  While living at a group home, respondent had stopped taking his medications for treatment of schizophrenia and he was not regularly eating his meals or bathing.  Respondent later left the group home and was incarcerated in the county jail for violating an order of protection.  

While incarcerated, respondent made delusional statements, refused to eat and refused to take his prescribed medication.  Respondent was then transferred from the county jail to Zeller Mental Health Center (Zeller) for treatment of his condition.  Dr. Attaluri testified respondent had been delusional since he was transferred to Zeller, believing that he was the President of the United States, a judge and an attorney.  Respondent agreed with this testimony, stating "that’s correct, exactly correct."  

Dr. Attaluri had diagnosed respondent with schizophrenia, chronic paranoid type, and testified that respondent had been suffering from that mental illness for at least the past 10 years.  Attaluri further testified that respondent did not believe he was mentally ill and he had refused to take his prescribed medication.  Respondent had also refused to take his medication on several prior occasions over the past few years.  When he stopped taking his medication, respondent had violated orders of protection his family members had obtained restraining respondent from contact with them.

Since he was admitted to Zeller, respondent had bathed and dressed himself, eaten meals, spoken with his therapist and attended group sessions.  However, respondent persisted in his refusal to take psychotropic medication because he did not believe he was mentally ill.  Dr. Attaluri opined that respondent was unable to provide for his basic physical needs and stated the treatment plan involved stabilizing respondent on his medications and then transferring him to a group home.  

Respondent testified he had bathed, dressed himself and eaten meals regularly while he was at the group home and at Zeller.  While in the county jail, respondent ate meals but showered less frequently because he viewed the jail as a hazardous place.  Respondent stated he would live at his family farm if he was released from Zeller.  However, on cross-examination, respondent stated he could not live at the family farm because tenants lived there.  Respondent then testified he would live at his house on Park School Road if he was released.  

The trial court found respondent was mentally ill and was unable to provide for his basic physical needs.  The court entered an order involuntarily admitting respondent to the Department of Mental Health and Developmental Disabilities.  

At the hearing on the petition for involuntary treatment, Dr. Attaluri testified he had prescribed Haldol to stabilize the symptoms of respondent’s mental illness and Ativan to treat anxiety and agitation.  Dr. Attaluri testified such medications were the only effective treatment for respondent’s condition.  The potential side effects of these medications included tremors, rigidity and drowsiness, but respondent had not experienced any side effects when he previously took these medications.  Dr. Attaluri further testified respondent would be monitored while taking the medications and he believed the benefits of this treatment outweighed any risks. 

The court entered an order allowing involuntary administration of psychotropic medication and electro-convulsive therapy.  The order did not specify the medications to be used or the dosages allowed to be administered to respondent.

DISCUSSION

Respondent does not contest his diagnosis of schizophrenia, but argues that the evidence presented at the hearing did not establish that he is unable to provide for his basic physical needs.  Respondent also contends the State did not establish that hospitalization was the least restrictive treatment alternative.

An individual may be involuntarily admitted if the State proves by clear and convincing evidence that (1) he is mentally ill; and (2) he is incapable of providing for his basic physical needs so as to guard himself from serious harm.  405 ILCS 5/1--119(2), 3--808 (West 2000).  In determining whether a person can provide for his basic physical needs, courts may consider his ability to obtain food, shelter and medical care, and whether he has a place to live or family to support him.  
In re Winters
, 255 Ill. App. 3d 605, 627 N.E.2d 410 (1994).  The circuit court’s decision to involuntarily admit an individual will not be reversed on appeal unless it is manifestly erroneous.  
In re Rovelstad
, 281 Ill. App. 3d 956, 667 N.E.2d 720 (1996).  

If a person is found subject to involuntary admission, the court must consider various treatment alternatives which are available to the respondent, including hospitalization, outpatient treatment or placement with a relative.  405 ILCS 5/3--811 (West 2000); 
In re Luttrell
, 261 Ill. App. 3d 221, 633 N.E.2d 74 (1994).  The court must order the least restrictive treatment alternative which is appropriate.  405 ILCS 5/3--811 (West 2000). 

In this case, the evidence established that respondent had been consistently diagnosed with schizophrenia over the past 10 years and he was suffering from that mental illness at the time of the hearing.  Respondent did not provide care for himself during the relevant time period, but was cared for at the group home, jail and hospital.  

Respondent was delusional as shown by the testimony and by his own statements at the hearing.  The testimony also indicated that respondent had refused to voluntarily take his medications and he could not expect an improvement in his condition without that treatment.  Moreover, respondent’s testimony was uncertain with regard to where he would live if he was released.  We cannot conclude from respondent’s testimony that he had a place to live if he was released.  Further, there was no indication that respondent had someone willing to assist him in his care.  In this regard, we note that respondent’s family members had apparently obtained orders of protection against him.  This evidence supports a finding that respondent was mentally ill and that he was unable to provide for his basic physical needs. 

Respondent also argues he could have been placed in a group home as a less restrictive alternative to hospitalization.  

Dr. Attaluri testified that the only effective method of treating respondent’s mental illness was to administer psychotropic medication.  However, respondent had refused to take his medications while in the group home.  Therefore, a group home would not be a viable alternative to ensure respondent’s symptoms were stabilized on his medication.  Based on these facts, we conclude there was no less restrictive alternative to hospitalization.  In sum, we find the trial court’s decision to order involuntary hospitalization was not against the manifest weight of the evidence.           

Respondent also contends the order allowing involuntary treatment should be reversed because it was not specific as to the authorized treatment, medications or dosages. 

An order authorizing involuntary treatment must designate the people allowed to administer the treatment and must specify the authorized medications and anticipated range of dosages.  405 ILCS 5/2--107.1(a)(6) (West 2000).      

In this case, the court used a form order.  The order simply stated that the clinical staff was authorized to involuntarily administer psychotropic medication and electro-convulsive therapy.  The order did not specify the medications or dosages that could be administered.  Therefore, the order was not in compliance with the statute requiring specificity in the medications and dosages to be administered.  Further, the court’s oral ruling did not provide the information necessary to comply with the statutory requirements.

In a recent case, the Fourth District Appellate Court held that the lack of specificity in a trial court order authorizing involuntary treatment resulted in a failure to ensure proper use of psychotropic medication.  
In re Gwendolyn N.
, 326 Ill. App. 3d 427, 760 N.E.2d 575 (2001).  The court reversed the order authorizing involuntary treatment, concluding that the respondent’s liberty interests were violated due to the lack of specificity in the order.  
Gwendolyn N.
, 326 Ill. App. 3d 427, 760 N.E.2d 575.    

Likewise, in this case 
the lack of specificity in the trial court’s order resulted in a failure to ensure that respondent would receive only the involuntary treatment specifically authorized by the court.  Under the terms of the order, respondent could be administered any psychotropic medication in any dosage.  Respondent could also be administered electro-convulsive therapy.  In its oral ruling, the court acknowledged that the State was not seeking authority to administer electro-convulsive therapy, and it seemed to be understood that such treatment would not be administered.  Nonetheless, the court’s written order authorized such treatment.   

As in 
Gwendolyn N.
, we do not question that the trial court and clinical staff have the best of intentions for treating respondent.  However, the statute requires specificity as a safeguard against potential abuses of involuntary administration of such treatment.  See 
In re C.E.
, 161 Ill. 2d 200, 641 N.E.2d 345 (1994); 
Gwendolyn N.
, 326 Ill. App. 3d 427, 760 N.E.2d 575.  We conclude respondent was prejudiced by the failure to specify the authorized involuntary treatment, medications or anticipated dosages.  Accordingly, the order authorizing involuntary treatment must be reversed.             

Because we find the order authorizing involuntary treatment was not in compliance with the statutory requirements, we will not consider respondent’s other arguments challenging that order. 

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part and reversed in part
.

Affirmed in part and reversed in part.

LYTTON, P.J., and HOMER, J., concur.