*In re* JENNIFER H., Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Jennifer H., Respondent-Appellant).

Third District   No. 3—01—0972

Opinion filed August 13, 2002.

Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, and Jeff M. Plesko and Elvis C. Cameron, both of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McDADE delivered the opinion of the court:

The respondent, Jennifer H., was involuntarily admitted to a mental health facility. The court granted the State's petition to involuntarily administer psychotropic medication to her. On appeal, the respondent argues that the court's involuntary treatment order was invalid because it (1) included language about the respondent's "disruptive behavior," which was not a statutory criterion for involuntary treatment at the time the order issued; (2) did not designate the persons authorized to administer the medications; (3) did not specify the medications; and (4) did not specify the range of dosages for those medications. We reverse.

## BACKGROUND

On November 13, 2001, the State filed petitions (1) to involuntarily admit the respondent to a mental health facility, and (2) to involuntarily administer psychotropic medications to her. At a hearing on these petitions held on November 14, 2001, the respondent refused to attend. The court granted the State's petition to involuntarily admit her for a period of up to 90 days.

During the portion of the hearing on the petition to involuntarily administer psychotropic medications, Dr. Sreehari Patibandla stated that the respondent was admitted to the Zeller Mental Health Center (Zeller) on November 9, 2001, where Patibandla was a psychiatrist. When the respondent was admitted, she presented symptoms of psychosis with persecutory thoughts. The respondent believed that the facility had the wrong person, that people were "after her," and that people were trying to harm her.

While on her own in the community, the respondent was not bathing or eating properly. She was homeless and was eating out of garbage cans. The respondent was causing disturbances in the community and had been arrested several times.

The doctor stated that the respondent suffered from schizophrenia, a serious mental illness. He said that she had this mental illness at least since 1987. One of the characteristics of the respondent's mental illness was the continued deterioration in her ability to function or an inability to function in the community.

Patibandla testified that he had prescribed medication for the respondent's mental illness. In the petition for involuntary treatment, Patibandla's first choice for medication was 2 to 12 milligrams of Risperdal, with alternatives listed as 2.5 to 20 milligrams of Zyprexa, 5 to 80 milligrams of Haldol, and 1 to 8 milligrams of Ativan. The doctor said that Haldol, Zyprexa, or Risperdal would be administered to the respondent "one at a time." Depending on her response to those medications, Ativan would be given to her "concurrently with the other three."

The doctor stated that these medications were intended to improve the respondent's persecutory thinking, her ability to care for herself, and her ability to make reasoned decisions. He said that the respondent had taken Haldol in the past, which had improved her symptoms. However, at the time of the hearing, the respondent refused to take any medications, believing that she did not need them. Patibandla stated that these medications were antipsychotic agents. He submitted that their benefits outweighed any of their possible side effects.

Patibandla testified that the respondent did not have the capacity to make a reasoned decision concerning whether to take medication. He stated that less restrictive services for the respondent had been explored in the community, but had been ineffective. The doctor believed that without medication, the respondent's condition would not improve. He recommended that the medications be involuntarily administered for up to 90 days.

The judge granted the State's petition. The court's written order was dated November 14, 2001. This document is a form order with blanks to be filled in by the court. The printed language of the form indicates the court found, *inter alia*, that because of her mental illness, the respondent exhibited "threatening or disruptive behavior." The order states that psychotropic medication was to be administered by the Zeller staff. The order does not specify, however, the types of medication, the dosages, or the persons authorized to administer the medications. It is from this order that the respondent appeals.

The record indicates that the respondent's petition for discharge from Zeller was granted on December 5, 2001.

## ANALYSIS

### I. Mootness

■ The State notes that this case is moot because the court's 90-day involuntary treatment order has expired and the respondent has been discharged from Zeller. The State acknowledges, however, that the Illinois Supreme Court recognized an exception to the mootness

doctrine for mental health cases in *In re Barbara H.*, 183 Ill. 2d 482, 702 N.E.2d 555 (1998). In *Barbara H.*, the court stated that where a case involves an event of short duration that is capable of repetition, yet evading review, it qualifies for review even if it otherwise would be moot. Because psychotropic medications cannot be administered for more than 90 days without review by the trial court, such a time period is too brief to allow for appellate review. The *Barbara H.* court also emphasized that a respondent who has a history of mental illness is likely to be subjected to involuntary administration of medications again. The court stated that appellate orders in these cases are in the nature of advisory rulings.

The present respondent's situation qualifies for the exception to the mootness doctrine articulated in *Barbara H.* The 90-day maximum period of involuntary treatment was too brief to permit appellate review. The respondent's history of mental illness makes it likely that she will be subjected to involuntary treatment again. Therefore, under the mootness exception in *Barbara H.*, we have authority to consider the respondent's appeal.

## II. The Court's Involuntary Treatment Order

The respondent contends that the court's order was defective because it (1) mentioned the respondent's "disruptive behavior," which was not a statutory prerequisite for involuntary treatment at the time the order issued; (2) did not designate the persons authorized to administer the medication; (3) did not specify which medications were to be administered; and (4) did not specify the range of dosages for the medications. She submits that the defects in the court's order prejudiced her liberty interests.

◼ The State is not authorized to involuntarily administer treatment to a respondent unless the court determines by clear and convincing evidence that all of the following factors exist: (1) the respondent has a serious mental illness; (2) because of her mental illness, the respondent exhibits any one of the following: (a) deterioration of her ability to function, (b) suffering, or (c) threatening behavior; (3) the benefits of the treatment outweigh the harm; (4) the respondent lacks the capacity to make a reasoned decision about the treatment; and (5) other less restrictive services have been explored and found inappropriate. 405 ILCS 5/2—107.1(a—5)(4)(A) through (a—5) (4)(F) (West Supp. 2001). The court's order shall designate the persons authorized to administer the involuntary treatment. The order also shall specify the medications and the anticipated dosages that have been authorized. 405 ILCS 5/2—107.1(a—5)(6) (West Supp. 2001). An appellate court will reverse a trial court's order to

involuntarily administer psychotropic medications only if it is manifestly erroneous. *In re Dorothy W.*, 295 Ill. App. 3d 107, 692 N.E.2d 388 (1998).

The language and designation of subsections for section 2—107.1 have undergone many revisions in recent years. The Illinois legislature deleted reference to "disruptive behavior" and renumbered the subsections by Public Act 91—726. Pub. Act 91—726, eff. June 2, 2000 (amending 405 ILCS 5/2—107.1 (West 2000)). In 1996, the applicable language of section 2—107.1 referred to "threatening or disruptive behavior" (405 ILCS 5/2—107.1(a)(4)(B) (West 1996)). In 1998, the analogous passage read "(iii) threatening behavior, or (iv) disruptive behavior" (405 ILCS 5/2—107.1(a)(4)(B) (West 1998)). After June 2, 2000, the passage was reduced to "(iii) threatening behavior" (405 ILCS 5/2—107.1(a—5)(4)(B) (West Supp. 2001)).

■ In this case, the printed language of the court's form order apparently tracked the language of the statute from prior to June 2, 2000. The order was in error because it did not track the language of the statute at the time the order issued on November 14, 2001. However, we hold that this error was harmless because the version of the statute effective at the time of the order was in the disjunctive. It was not error for the court to state that the respondent exhibited either threatening or disruptive behavior when the correct statutory language only required the court to find that the respondent exhibited one of the following: (1) deterioration of her ability to function; (2) suffering; or (3) threatening behavior. See 405 ILCS 5/2—107.1(a—5)(4)(B) (West Supp. 2001).

The respondent relies upon *In re Gwendolyn N.*, 326 Ill. App. 3d 427, 760 N.E.2d 575 (2001), for the proposition that the failure of a court's order to specify the persons authorized to administer the medications, the types of medications, and the range of dosages is reversible error. The State contends that *Gwendolyn N.* is distinguishable from the present case. Instead, the State argues that this case is controlled by *In re Miller*, 301 Ill. App. 3d 1060, 705 N.E.2d 144 (1998), and *In re Barry B.*, 295 Ill. App. 3d 1080, 693 N.E.2d 882 (1998).

*Miller* held that although the trial court's order violated section 2—107.1(a)(6), reversal was not warranted because (1) the respondent failed to object in the trial court, (2) the respondent's attending physician was intimately familiar with the respondent's treatment protocol, and (3) the respondent did not contend that he was prejudiced by the court's defective order. *Miller*, 301 Ill. App. 3d 1060, 705 N.E.2d 144. In *Gwendolyn N.*, the Illinois Appellate Court, Fourth District, revisited its ruling in *Miller* and found it to be distinguishable. The *Gwendolyn N.* court reversed because the respondent in that case as-

serted that her liberty interests were prejudiced by the trial court's defective order. *Gwendolyn N.*, 326 Ill. App. 3d 427, 760 N.E.2d 575.

In *Barry B.*, the Second District affirmed the trial court's involuntary treatment order despite its failure to specify the medications to be administered. However, in 1996, when the trial court's order issued in *Barry B.*, the statute did not require the order to specify the medications to be administered. See 405 ILCS 5/2—107.1(a)(6) (West 1996). The statute only required this information to be included in the State's petition for involuntary treatment. See 405 ILCS 5/2—107.1(a)(1) (West 1996). In 1997, the legislature amended the statute to require the order to specify the medications. Pub. Act 90—538, eff. December 1, 1997 (amending 405 ILCS 5/2—107.1(a)(6) (West 1996)). Therefore, *Barry B.* is inapplicable to our analysis of the current version of the statute.

■ We find the present case to be controlled by *Gwendolyn N.* rather than *Miller* or *Barry B.* The State submits that this case is distinguishable from *Gwendolyn N.* because the instant respondent has not argued that she was prejudiced by the court's order. We disagree. The respondent in this case specifically argued in her briefs that her liberty interests were violated by the trial court's defective order. We hold that it was manifestly erroneous for the trial court to fail to specify in its order the persons authorized to administer the medications, the types of medications, and the range of dosages. We reemphasize the Illinois Supreme Court's position in *Barbara H.* that our ruling is advisory. See *Barbara H.*, 183 Ill. 2d 482, 702 N.E.2d 555.

## CONCLUSION

For the foregoing reasons, we reverse the involuntary treatment order of the Peoria County circuit court.

Reversed.

HOLDRIDGE and HOMER, JJ., concur.