788 N.E.2d 99 (2003)
338 Ill. App.3d 103
272 Ill.Dec. 795
In the Matter of R.C., Alleged to be a Person Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. R.C., Respondent-Appellant).
No. 1-01-4525.
Appellate Court of Illinois, First District, Third Division.
March 26, 2003.
William E. Coffin, Managing Attorney, Jeff M. Plesko, Director, Patricia Werner, Staff Attorney, and William Conroy, Managing Attorney, Legal Advocacy Service, Illinois Guardianship and Advocacy Commission, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, Janet Powers Doyle and Peter Maltese, of counsel), for Appellee.
Justice WOLFSON delivered the opinion of the court:
The State filed a petition seeking involuntary medication of Randall C. On a date set for trial, this troubled respondent asked for appointment of an independent expert. The trial court, deciding that the request was made for the purpose of delaying the trial, denied the request. The question we must answer is whether the trial court had discretion to deny the request for appointment. We conclude it did not.
Following a jury trial pursuant to a petition seeking involuntary medication of respondent, a patient at Chicago-Read Mental Health Center (Chicago-Read), the *100 jury found respondent subject to involuntary medication with psychotropic drugs for a period not to exceed 90 days. Respondent contends: (1) the trial court's order for involuntary administration of medication must be reversed because he was denied his statutory right to the appointment of an independent expert, and (2) he was denied the effective assistance of counsel. We reverse and remand.
FACTS
On August 31, 2001, Dr. Usha Kartan, a psychiatrist employed at Chicago-Read, filed a petition in the circuit court of Cook County asserting that respondent required psychotropic medication but refused to take the medication when offered by the hospital staff. In the petition, Dr. Kartan noted a court had ordered involuntary administration for respondent on June 2, 2001, for a period of 90 days. Respondent told staff members he was planning to stop the medication after the 90 days expired, because there was nothing wrong with him and he did not need it. According to Dr. Kartan, respondent, even on medication, was grandiose, flighty, isolative, and withdrawn. He exhibited poor hygiene, impaired judgment and extremely poor insight. Respondent had "clearly improved" while on court-ordered medication. Due to his thought disorder, respondent was unable to give informed consent and thought he did not need medication.
Prior to the hearing on the petition, on October 19, 2001, respondent appeared pro se before the trial court and requested that the court order an independent examination of respondent by a psychiatrist. The court denied the request.[1]
At the hearing on November 27, 2001, Dr. Kartan testified she had been treating respondent since September 5, 2000, when he was transferred to her unit at Chicago-Read. He had been hospitalized since September 1999 and "several times" prior to 1999. Dr. Kartan said she attempted to evaluate respondent every day Monday through Friday, whenever he cooperated with her. Respondent had no family contacts, and his father had lost contact with him since 1981. In Dr. Kartan's opinion, based on her evaluations, review of medical records, and discussions with other doctors, respondent suffered from a mental illness. The diagnosis was paranoid schizophrenia, continuous in nature, with a history of poly-substance abuse. Respondent first had been diagnosed with schizophrenia in 1972.
According to Dr. Kartan, respondent exhibited both positive symptoms, including delusions, hallucinations, and disorganized thinking, and negative symptoms interfering with his functioning.
Dr. Kartan saw a reduction in respondent's symptoms while he was on court-ordered medication, but an increase in severe symptomology when the involuntary medications expired.
Dr. Kartan said respondent's current hospitalization was his twenty-third Department of Mental Health (Department) hospitalization. She had seen significant improvement in respondent's illness while he was on medication, and she wanted to offer services to him with the goal of his discharge. Respondent became upset in the past when they discussed his discharge and said there was no place for him in the community. Respondent told Dr. Kartan the State had placed him in a rat-infested place to live. Dr. Kartan said she believed an appropriate place could be found for respondent if he was discharged. Respondent *101 refused to discuss medications and side effects with her because he believed that he was not ill and that Dr. Kartan did not have a license to treat him. In Dr. Kartan's opinion, respondent did not have the capacity to make a decision about his medical treatment because of acute psychosis.
On cross-examination, Dr. Kartan testified respondent had never voluntarily agreed to take medication, other than the time medication was court-ordered. Since 1972, respondent had been in the care and custody of the Department of Mental Health, off and on. Since that time, he would "relapse" and be hospitalized on almost a yearly basis.
Respondent testified that he did not want to take medication against his will. He said he had been hospitalized at Chicago-Read for seven weeks, and the hospital wanted to involuntarily discharge him against his will. He said he was hospitalized in Elgin Mental Health Center for six months. During that time, he was not taking medication and refused medication. After he was transferred to Chicago-Read, respondent was offered medication once, and he said "no comment." On cross-examination, respondent testified he was hospitalized in Elgin because he was accused of sexually assaulting a young girl, but he was found not competent to stand trial.
After hearing arguments on both sides, the jury found respondent subject to involuntary treatment. The court entered an order providing that for a period not exceeding 90 days, Dr. Kartan was permitted to administer the following medications to respondent: Zyprexa, Depakote, Thorazine, Prolixin, Cogentin, Zoloft, Ativan, and Klonopin. The order also specified the range of doses for the medications. Respondent asked the trial court to stay the order. The court denied the request.
DECISION

Mootness
Although not discussed by the parties, we must address the issue of mootness. The trial court's order, the basis for respondent's appeal, expired on February 27, 2002, 90 days after it was entered. Even if moot, we may consider this case under the exception recognized in In re Barbara H., 183 Ill.2d 482, 234 Ill. Dec. 215, 702 N.E.2d 555 (1998), and In re Jennifer H., 333 Ill.App.3d 427, 266 Ill. Dec. 776, 775 N.E.2d 616 (2002). In re R.K., 338 Ill.App.3d 514, 520, 271 Ill.Dec. 954, 786 N.E.2d 212 (2003). Where a case involves "an event of short duration that is capable of repetition, yet evading review," it may qualify for review even if it otherwise would be moot. Jennifer H., 333 Ill.App.3d at 430, 266 Ill.Dec. 776, 775 N.E.2d 616. In such a case, the appellate order is in the nature of an advisory ruling. Jennifer H., 333 Ill.App.3d at 430, 266 Ill.Dec. 776, 775 N.E.2d 616; In re R.K., 338 Ill.App.3d at 520, 271 Ill.Dec. 954, 786 N.E.2d 212. Here, respondent's history of mental illness makes it likely that he will be subject to involuntary treatment again. Therefore, we have authority to consider the respondent's appeal under the mootness exception in Barbara H. and Jennifer H. In re R.K., 338 Ill.App.3d at 520, 271 Ill.Dec. 954, 786 N.E.2d 212.

Independent Examination
Section 3-804 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-804 (West 2000)) provides for an independent examination of a respondent in admission, transfer, and discharge proceedings. Section 3-804 states:

*102 "[t]he respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist or other expert of his choice. If the respondent is unable to obtain an examination, he may request that the court order an examination to be made by an impartial medical expert pursuant to Supreme Court rules or by a qualified examiner, clinical psychologist or other expert. Any such physician or other examiner, whether secured by the respondent or appointed by the court, may interview by telephone or in person any witnesses or other persons listed in the petition for involuntary admission. The physician or other examiner may submit to the court a report in which his findings are described in detail. Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule." 405 ILCS 5/3-804 (West 2000).
A respondent in a hearing for involuntary administration of medication may request that a court order an independent examination. Section 2-107.1 of the Code, which governs the administration of authorized involuntary treatment, incorporates section 3-804 with the following language:
"[t]he court may grant an additional continuance not to exceed 21 days when, in its discretion, the court determines that such a continuance is necessary in order to provide the recipient with an examination pursuant to Section 3-803 or 3-804 of this Act, to provide the recipient with a trial by jury as provided in section 3-802 of this Act, or to arrange for the substitution of counsel as provided for by the Illinois Supreme Court Rules. (3) Unless otherwise provided herein, the procedures set forth in Article VIII of Chapter 3 of this Act, including the provisions regarding appointment of counsel, shall govern hearings held under this subsection (a-5)." 405 ILCS 5/2-107.1(a-5)(2),(3) (West 2000).
On October 19, 2001, respondent appeared pro se before the trial court and requested that the court order an independent examination by a psychiatrist, pursuant to section 3-804 of the Code. The trial judge noted that the case had been before the court on September 7, September 13, September 21, September 28, October 5, and October 17. On the last date, the public defender was given leave to withdraw, and respondent was given leave to proceed pro se. The matter had been set for trial for October 19. Previously, respondent had discharged "three sets of attorneys" from the Guardianship and Advocacy Commission and from the Public Defender's Office.
The trial judge asked respondent his reason for requesting an independent examination. Respondent replied: "I told you as I stated before my reasons for requesting an independent examination are simply to defer the trial as you suggest because I am not prepared to go to court. I believe, I know there are exceptional circumstances in my case, your Honor, that should be brought to the court, and I don't want to do that disservice of justice."
The State contended the court should not allow the examination, because respondent was using it as a delay tactic, and respondent previously had received an independent psychiatric evaluation in March 2001 for another court-ordered medication case. The court denied respondent's request, based on the prior continuances and the fact that respondent had not made a request for an examination in any prior appearance. The trial judge found the only reason for the request was to delay the hearing. Respondent then demanded a jury trial.
*103 The matter was continued until October 24, 2001 and again to October 31, 2001. On October 31, the trial court appointed the Public Defender's Office to represent respondent, finding he was incapable of representing himself due to his mental illness. The hearing on the State's petition took place November 27, 2001.
Defendant contends on appeal that the trial court had no discretion under section 3-804 to deny his request for an independent examination. He contends the court's denial was reversible error and asks us to reverse the court's order for involuntary administration of medication.
This court has held a respondent is statutorily entitled to the appointment of an independent examination prior to a hearing on a petition for discharge (In re Yoder, 289 Ill.App.3d 465, 469, 225 Ill.Dec. 9, 682 N.E.2d 753 (1997); In the Matter of Katz, 267 Ill.App.3d 692, 697, 205 Ill.Dec. 28, 642 N.E.2d 893 (1994); Brelje v. Pates, 99 Ill.App.3d 847, 849-50, 55 Ill.Dec. 300, 426 N.E.2d 275 (1981)), and prior to a hearing for involuntary admission (In re Barnard, 247 Ill.App.3d 234, 251-52, 186 Ill.Dec. 524, 616 N.E.2d 714 (1993); In re Williams, 140 Ill.App.3d 708, 710-11, 95 Ill.Dec. 126, 489 N.E.2d 347 (1986) (Williams II); In re Williams, 133 Ill. App.3d 232, 236, 88 Ill.Dec. 376, 478 N.E.2d 867 (1985) (Williams I). This court has found that Illinois requires an independent psychiatric examination in proceedings for involuntary treatment. In re Branning, 285 Ill.App.3d 405, 417, 220 Ill.Dec. 920, 674 N.E.2d 463 (1996) (ward is entitled to independent examination in proceeding on guardian's petition for approval of her consent to electroconvulsive therapy for elderly ward).
Section 2-107.1 of the Code allows a trial court discretion to grant a continuance, not to exceed 21 days, in order to provide the recipient with an examination pursuant to section 3-804. 405 ILCS 5/2-107.1(a-5)(2) (West 2000). Section 2-107.1 incorporates the provisions of section 3-804 in proceedings for administration of authorized involuntary treatment. 405 ILCS 5/2-107. 1(a-5)(3) (West 2000). Section 3-804 says a respondent is "entitled to secure an independent examination" by an expert of his choice. 405 ILCS 5/3-804 (West 2000). If he is unable to do so, he "may request that the court order an examination to be made by an impartial medical expert pursuant to Supreme Court rules or by a qualified examiner." 405 ILCS 5/3-804 (West 2000).
The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. In re Mary Ann P., 202 Ill.2d 393, 405, 269 Ill.Dec. 440, 781 N.E.2d 237 (2002). The language used in the statute is the most reliable indicator of the legislature's intent and must be given its plain, ordinary meaning. Mary Ann P., 202 Ill.2d at 405, 269 Ill.Dec. 440, 781 N.E.2d 237. Where the statutory language is clear and unambiguous, we will give effect to it without resort to other aids of construction. Mary Ann P., 202 Ill.2d at 405, 269 Ill.Dec. 440, 781 N.E.2d 237.
Based on the clear language of sections 2-107.1 and 3-804 of the Code, we find the respondent was entitled to an examination by an independent expert appointed by the court and paid for by the State. See Williams I, 133 Ill.App.3d at 236, 88 Ill. Dec. 376, 478 N.E.2d 867. Failure to do so was reversible error. Williams I, 133 Ill. App.3d at 236, 88 Ill.Dec. 376, 478 N.E.2d 867. The trial court had no discretion to deny respondent his statutory right.
The State contends the use of the word "may" in section 3-804 shows the trial court has discretion in deciding whether to order an independent examination. This contention is a misinterpretation of the statute. The State cites Gonzalez v. Profile *104 Sanding Equipment, 333 Ill.App.3d 680, 692-93, 267 Ill.Dec. 295, 776 N.E.2d 667 (2002), where the court held the use of the word "may" in a statute signifies a legislative intent to vest the trial court with discretion in awarding relief to a party. In Gonzalez, the word "may" in the statute referred to the court, not to the party (section 2-1402 provides a court "may," by appropriate order or judgment, transfer choses in action). Here, the word "may" in section 3-804 attaches to the respondent. If the respondent is unable to obtain an examination, he "may request that the court order an examination." The use of the word "may" shows that the respondent may request that the court order an exam; it does not grant the court discretion to deny respondent's request.
The State also contends respondent fails to show he is constitutionally entitled to an independent examination. In Williams I, the court held a respondent in a civil commitment proceeding does not have a constitutional right to an independent psychiatric examination at the State's expense. Williams I, 133 Ill.App.3d at 234, 88 Ill. Dec. 376, 478 N.E.2d 867. The court ultimately held, however, that a respondent has a statutory right to an examination by an independent expert appointed by the court and paid for by the State. Williams I, 133 Ill.App.3d at 236, 88 Ill.Dec. 376, 478 N.E.2d 867. Respondent's request for an examination in this case was based on the statute, not the constitution.
The State relies on two cases from the Fifth District, Pates and Barnard, in contending the trial court has discretion to decide whether to appoint an independent expert to examine a respondent. According to the State, these cases hold that the section 3-804 provision for an independent expert is not mandatory in every case where a respondent makes such a request. The State contends the holdings in Pates and Barnard differ from cases in the Third District, Williams I, Williams II, and Katz, which hold that a respondent is entitled to an independent examination at the State's expense. We believe the State misinterprets the holdings of the Fifth District cases.
In Pates, the respondent was examined by Dr. Dan Cuneo, a psychologist employed by the Department, who testified at the proceeding on respondent's petition for discharge. Pates, 99 Ill.App.3d at 848-49, 55 Ill.Dec. 300, 426 N.E.2d 275. The respondent contended he was denied his statutory rights because the trial court refused his request for an independent psychiatric examination prior to the hearing. The Fifth District court held that the appointment of Dr. Cuneo fulfilled the statutory requirement of providing respondent with an examination by an impartial psychologist. Pates, 99 Ill.App.3d at 849, 55 Ill.Dec. 300, 426 N.E.2d 275. The respondent did not allege that Dr. Cuneo was not impartial, nor did the record show Dr. Cuneo was not impartial. Dr. Cuneo did not provide a certificate for respondent's involuntary admission or help prepare a treatment plan. He was not a full-time employee of the Department and spent little of his professional time as an employee of the Department due to his private practice and teaching activities. Pates, 99 Ill.App.3d at 850, 55 Ill.Dec. 300, 426 N.E.2d 275.
In Barnard, the respondent challenged the impartiality of the same expert, Dr. Cuneo, who examined respondent prior to the hearing and testified at his involuntary admission hearing. Barnard, 247 Ill. App.3d at 249, 186 Ill.Dec. 524, 616 N.E.2d 714. The court found the respondent had been provided with an examination by an impartial psychologistDr. Cuneo. The court re-affirmed its holding in Pates, finding section 3-804 of the Code "merely *105 requires the State to provide respondent with an impartial medical expert upon request and does not exclude Department of Mental Health employees from being considered as impartial * * *. While the expert appointed by the court may not be the examiner the respondent would have chosen, we do not read section 3-804 as mandating that the appointed examiner be chosen by the respondent." Barnard, 247 Ill.App.3d at 250, 186 Ill.Dec. 524, 616 N.E.2d 714.
Pates and Barnard do not hold, as the State contends, that the trial court has discretion when deciding whether to grant an independent examination. Rather, they hold a respondent's statutory entitlement may be satisfied by an examination by a Department employee, provided the employee is impartial.
In this case, respondent was not provided with an examination by an impartial, independent examiner. Dr. Kartan was respondent's treating physician. She testified that she attempted to evaluate respondent on a daily basis and prepared his treatment plans. She also prepared the petition for respondent's involuntary medication. In contrast to Pates and Barnard, the record presents us with ample evidence that Dr. Kartan was not an impartial examiner.
Respondent was denied his statutory right when the trial court failed to provide him with an examination by an independent expert. The fact that respondent may have used his request as a delay tactic does not defeat his statutory entitlement. The statute does not require that respondent have a particular reason for his request. Nor does it envision an inquiry into a respondent's motives. It says only that respondent is "entitled" to the examination. Black's Law Dictionary defines an "entitlement" as "[a]n absolute right to a (usu. monetary) benefit, such as social security, granted immediately upon meeting a legal requirement." Black's Law Dictionary 553 (7th ed.1999). Respondent had a right to an independent examination, and the trial court had no discretion to deny it. We note that although the trial court denied the examination because it would delay the hearing, the hearing did not take place until 39 days later. There was sufficient time for respondent to be examined by an impartial psychologist.

Effective Assistance Of Counsel
Respondent also contends on appeal that he was denied the effective assistance of counsel because the public defender failed to challenge the State's case during cross-examination and failed to ask the jury to deny the State's petition during closing argument. Because of our disposition of the independent medical examination issue, we see no reason to inquire into counsel's conduct at the trial.
CONCLUSION
We find the trial court's failure to appoint an independent expert to examine respondent was reversible error. Under section 3-804 of the Code, respondent was entitled to an independent examination.
Reversed and remanded.
HOFFMAN and HALL, JJ., concur.
NOTES
[1] Respondent personally made a second request for an independent examination on October 31, 2001. It is not clear whether he was represented by counsel at that time. Due to our disposition of this case, there is no need to reach that request.