No. 2--05--1214           filed: 12-20-06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re DRU G., Alleged to be a Person in Need of Involuntary Psychotropic Medication | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | | No. 05--MH--128 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Dru G., Respondent-Appellant). | | Honorable James C. Hallock, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Respondent, Dru G., appeals from an order of the circuit court of Kane County authorizing the involuntary administration of psychotropic medication. On appeal, respondent argues that she was denied due process when a psychologist instead of a psychiatrist was appointed to independently evaluate her. We reverse.

I. BACKGROUND

Respondent was found unfit to stand trial for an unauthorized-use-of-a-credit-card charge brought against her in 2005. She was admitted to the Elgin Mental Health Center (EMHC) on July 27, 2005, and was treated by Dr. Carol Rosanova, a psychiatrist at the EMHC. In Dr. Rosanova's opinion, respondent suffers from paranoid schizophrenia and would benefit from psychotropic medications. Dr. Rosanova believes the benefits of respondent taking psychotropic medications would clearly outweigh the possible harm. She prescribed several medications: Olanzapine at 10 to 15 milligrams; Risperdal at 2 to 6 milligrams; Quetiapine at 200 to 600 milligrams; and Aripiprazole

at 10 to 30 milligrams. Dr. Rosanova further prescribed Haldol in the event respondent would not take the medications voluntarily.

Respondent took one dose of Risperdal early in her admission but subsequently refused medication and stated that she was not mentally ill. Respondent insisted that she suffered from attention deficit hyperactivity disorder (ADHD), lupus, and narcolepsy, and she demanded Adderall, which is a controlled substance for treating ADHD. Respondent told Dr. Rosanova that her physician, Dr. Powell, prescribed her Adderall in the past.

On September 13, 2005, Dr. Rosanova filed a petition for the involuntary administration of psychotropic medications pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2--107.1 (West 2004)). On September 23, 2005, when the matter was up for status, respondent's attorney requested a continuance in order to obtain an independent evaluation. Respondent requested that an independent evaluation be performed by Dr. Powell pursuant to section 3--804 of the Code (405 ILCS 5/3--804 (West 2004)). Respondent's public guardian appeared at the September 23 status hearing and objected to having Dr. Powell appointed for the independent evaluation. The guardian refused to pay for his services, stating that Dr. Powell's diagnosis of ADHD and treatment with Adderall were contrary to all other medical opinions since 2003 and that his treatment was detrimental to respondent. The guardian would pay for another physician to perform the evaluation, however.

The court found that, based on the guardian's information, an independent evaluation by Dr. Powell was not in respondent's best interests, and it continued the matter for one week so respondent could arrange for an independent evaluation by another qualified expert. Dr. Powell's medical specialty was unclear because the attorneys and Dr. Rosanova were unable to contact Dr. Powell.

Regardless, it appears that Dr. Powell was a medical doctor, as the fact that he prescribed Adderall for respondent is not contested in the record.

At the next status hearing, on September 30, 2005, respondent's attorney stated that she was not able to find a private doctor to evaluate respondent and she requested that the Kane County Diagnostic Center be ordered to perform the evaluation. The colloquy of the request transpired as follows:

"MS. KULLENGERG [Attorney for respondent]: My understanding is the guardian's, public guardian's office will pay for an independent evaluation, but I have not been able to obtain anyone, private doctors, to agree to come out here and do the evaluation so I'm requesting that the Kane County Diagnostic Center be ordered to perform the evaluation and then the guardian's office will work out a payment situation. I'm not asking them not to pay since there is some kind of money.

MS. POTTER [Assistant State's Attorney]: No objection, your Honor.

THE COURT: At this time the Kane County Diagnostic Center will be ordered to do the independent examination, and we probably need about a three-week date."

On October 21, 2005, the matter was continued without objection because the Kane County Diagnostic Center needed additional time to complete the evaluation. Respondent's presence at this status hearing was waived by counsel. The Kane County Diagnostic Center arranged for Dr. Timothy Brown, a clinical psychologist, to perform the independent evaluation of respondent. Dr. Brown evaluated respondent on October 24, 2005. Two days later, he issued his report recommending the administration of psychotropic medications. Dr. Brown's report was based on his interview with

respondent, EMHC medical records, and discussions with Dr. Rosanova and other social workers working with respondent at the EMHC.

The matter was heard on November 14, 2005, and respondent moved pro se for a continuance in order to obtain an independent evaluation by Dr. Powell. The court stated that the matter was already continued so that the Kane County Diagnostic Center could perform an evaluation. Respondent stated:

"Your Honor, I know nothing about the Kane County Diagnostic. I had asked for an independent evaluation. My doctor on the outside, Dr. Powell, who has seen me every three weeks for an hour knows everything about me, so I am asking for a continuance."

The court denied respondent's pro se motion, and petitioner called Dr. Rosanova to testify. Dr. Rosanova stated that lupus had been ruled out by a primary care physician at the EMHC and that based on observation, respondent showed no signs of narcolepsy or ADHD. Dr. Rosanova believed that respondent suffered from paranoid schizophrenia and that the benefits of the psychotropic medications she prescribed outweighed any of the possible side effects.

Respondent was called to testify, and during the course of her examination, she stated:

"I have the right to be tested for ADD. I have the right to be tested for narcolepsy.

* * *

So I am just asking for you to protect my personhood, my integrity, my character, and my rights, and before you start giving all these medications, that you find out that this, they affect the autoimmune system, the lupus, that I don't need them."

The court granted the petition and ordered the medications that Dr. Rosanova prescribed be administered to respondent for 90 days. Dr. Brown was not called to testify at this hearing but his

report was made part of the record, without objection from respondent, at the close of the proceeding. Respondent filed a notice of appeal on December 9, 2005, arguing that she was denied due process because a psychologist was not an appropriate expert to satisfy her right to an independent evaluation. For the following reasons, we agree.

## II. ARGUMENT

### A. Mootness

We first address preliminary issues raised by petitioner. Petitioner argues that respondent's issue is moot because the order was granted for no more than 90 days.[1] We disagree. Reviewing courts may review otherwise moot issues pursuant to the public interest exception. In re Robert S., 213 Ill. 2d 30, 45 (2004). The public interest exception applies when three criteria are present: (1) the question is of a public nature; (2) an authoritative determination for the purpose of guiding public officers is desired; and (3) the question will likely recur. In re Robert S., 213 Ill. 2d at 45. This case satisfies those criteria. Based on respondent's psychiatric history and prior refusal to take psychotropic medications voluntarily, the issue of whether a psychologist is an appropriate expert in this type of proceeding is likely to recur in future proceedings. This issue is certainly one of a public nature, and an authoritative determination of this issue is desirable to guide public officers handling such cases; therefore, we apply the public interest exception to the mootness doctrine.

---

[1]Petitioner also attached an affidavit and exhibit to its brief in support of the argument that the Kane County Diagnostic Center's proposal to use only psychiatrists for evaluations pertaining to involuntary-administration-of-psychotropic-medication proceedings makes respondent's issue moot. However, petitioner's exhibit is not part of the record and will not be considered by this court. McCarty v. Weatherford, 362 Ill. App. 3d 308, 311 (2005).

## B. Waiver

Next, we address petitioner's argument that respondent waived her right to an independent evaluation by a psychiatrist when respondent's attorney requested the appointment of the Kane County Diagnostic Center and failed to object to the admission of Dr. Brown's report. We reject petitioner's argument for three reasons.

First, we find that respondent did request an evaluation by a physician through her request for Dr. Powell at the September 23 hearing and further objected to the appointment of the Kane County Diagnostic Center when she moved pro se for a continuance at the November 14 hearing. While respondent's soliloquy may not be a textbook-quality objection, she nonetheless stated to the court that she knew nothing about the Kane County Diagnostic Center and requested an independent evaluation by her private physician, Dr. Powell. Therefore, we find that respondent preserved the issue for the record.

Even if respondent had waived this issue, "waiver is a limitation on the parties and not the courts, and, in order to achieve a just result, a reviewing court may ignore waiver, especially in a case where the State seeks to involuntarily administer psychotropic medication." In re Leslie H., No. 2--05--0648, slip op. at 3 (July 5, 2006). Considering that the Illinois Supreme Court has noted that the involuntary administration of psychotropic drugs involves a " ' "massive curtailment of liberty," ' " a reviewing court may choose to review regardless of whether the respondent waived the issue. In re Robert S., 213 Ill. 2d at 46, quoting In re Barbara H., 183 Ill. 2d 482, 496 (1998), quoting Vitek v. Jones, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980).

Finally, petitioner argues that the plain-error doctrine does not apply because this is not a case where the evidence is closely balanced. The plain-error doctrine allows a reviewing court to address

a waived or forfeited issue in two circumstances: (1) where the evidence is so closely balanced that the outcome may have resulted from the error rather than the evidence; or (2) where the error is so serious that the respondent was denied a substantial right, and thus a fair trial. People v. Herron, 215 Ill. 2d 167, 178-79 (2005). In this case, petitioner glaringly overlooks the second circumstance in which the plain-error doctrine may apply. As stated, the Illinois Supreme Court has described the involuntary administration of psychotropic drugs as an act that involves a " ' "massive curtailment of liberty" ' " (In re Robert S., 213 Ill. 2d at 46, quoting In re Barbara H., 183 Ill. 2d at 496, quoting Vitek, 445 U.S. at 491, 63 L. Ed. 2d at 564, 100 S. Ct. at 1263), and an act that is a " 'particularly severe' interference with a person's liberty" (In re Robert S., 213 Ill. 2d at 46, quoting Riggins v. Nevada, 504 U.S. 127, 134, 118 L. Ed. 2d 479, 488, 112 S. Ct. 1810, 1814 (1992)). Therefore, even if respondent waived her right to an independent psychiatric evaluation, the second prong of the plain-error doctrine applies.

We now address respondent's appeal on the merits,[2] and our review is de novo. In re Robert S., 213 Ill. 2d at 45 (applying de novo standard of review in determining whether constitutional rights have been violated and in statutory construction).

### C. Section 3--804

Respondent argues that the November 14 order authorizing the involuntary administration of psychotropic medication should be reversed because she was denied her right to an independent

---

[2]Petitioner also relies on Foutch v. O'Bryant, 99 Ill. 2d 389 (1984), to argue that respondent failed to provide a complete record. However, respondent supplemented the record with approval from this court, petitioner was afforded an opportunity to file a surreply brief, and petitioner was not prejudiced. Therefore, respondent satisfied her burden of supplying a complete record.

evaluation by a qualified examiner (405 ILCS 5/3--804 (West 2004)) when the court appointed a psychologist rather than a psychiatrist to evaluate her. Respondent states that because of the court's error in appointing a psychologist, she was deprived of due process. We agree.

Section 3--804 of the Code provides as follows:

"The respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist or other expert of his choice. If the respondent is unable to obtain an examination, he may request the court order an examination to be made by an impartial medical expert pursuant to Supreme Court Rules or by a qualified examiner, clinical psychologist or other expert. Any such physician or other examiner, whether secured by the respondent or appointed by the court, may interview by telephone or in person any witnesses or other persons listed in the petition for involuntary admission. The physician or other examiner may submit to the court a report in which his findings are described in detail. Determination of the compensation of the physician, qualified examiner, clinical psychologist or other expert and its payment shall be governed by Supreme Court Rule." 405 ILCS 5/3--804 (West 2004).

In In re Robert S., the supreme court analyzed the issue of whether a respondent's due process rights were violated when the trial court appointed a psychologist rather than a psychiatrist to evaluate whether the respondent should receive psychotropic medications involuntarily. In re Robert S., 213 Ill. 2d at 45-46. Although the State attempts to distinguish the facts of that case from the case at bar, we find In re Robert S. on point and controlling. In that case, the respondent's treating psychiatrist filed a petition seeking the involuntary administration of psychotropic medications. In re Robert S., 213 Ill. 2d at 32-33. The court granted the respondent's request for an independent

evaluation pursuant to section 3--804 of the Code but, because of the higher costs involved with a psychiatrist, the court appointed a psychologist. In re Robert S., 213 Ill. 2d at 35. Counsel for the respondent objected and requested a psychiatrist who possessed the expertise necessary to evaluate the appropriateness of the medications recommended for the respondent. In re Robert S., 213 Ill. 2d at 35. The respondent's treating psychiatrist and the psychologist appointed by the court both testified that the benefits of involuntarily administering psychotropic medications to the respondent would outweigh the possible harms, and the court granted the petition. In re Robert S., 213 Ill. 2d at 37-41.

In its analysis of whether the respondent in In re Robert S. was deprived of due process, the supreme court set forth the three due process factors outlined in Mathews v. Eldridge, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976): (1) the private interest at stake in the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the involved function and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. In re Robert S., 213 Ill. 2d at 48-49.

We are undoubtedly dealing with a significant private interest. The forced administration of psychotropic drugs is a "substantial interference with that person's liberty." Washington v. Harper, 494 U.S. 210, 229, 108 L. Ed. 2d 178, 203, 110 S. Ct. 1028, 1041 (1990). While the purpose of such drugs is to alter one's brain chemistry to attain beneficial results, the side effects may be serious and sometimes even permanent or fatal. Washington, 494 U.S. at 229, 108 L. Ed. 2d at 203, 110 S. Ct. at 1041. As the court in In re Robert S. explained, "the risk of an erroneous deprivation of the respondent's rights" through the use of a psychologist rather than a psychiatrist is obvious since only

a physician, such as a psychiatrist, can prescribe medication. In re Robert S., 213 Ill. 2d at 52-53. Physicians possess the knowledge necessary to prescribe medications safely, to recognize the beneficial effects and possible harmful side effects, and to understand their interactions with other drugs. A psychologist cannot give meaningful opinions on the possible harmful effects of any proposed medications.

Here, respondent moved for an independent evaluation by Dr. Powell, a physician. Section 3--804 does not mandate that the State appoint the exact examiner requested by a respondent. In re R.C., 338 Ill. App. 3d 103, 112 (2003). However, a qualified examiner must be appointed upon the respondent's request. The statute plainly states that if the respondent is unable to obtain an examination, the respondent may request that the court order "an examination to be made by an impartial medical expert" or by "a qualified examiner, clinical psychologist, or other expert." 405 ILCS 5/3--804 (West 2004). Thus, respondent, like the respondent in In re Robert S., was deprived of section 3--804's intended safeguard of having what is essentially a second opinion by a qualified expert, which in this case would be a medical doctor. In re Robert S., 213 Ill. 2d at 53.

Petitioner attempts to distinguish In re Robert S. by pointing to the fact that the supreme court reversed the trial court's order because it found cost to be an insufficient government interest to justify the risks of having a psychologist evaluate the respondent. Petitioner's interpretation of In re Robert S. oversimplifies the spirit of the holding. We agree that in this case, cost was not an issue. The record states that respondent's public guardian was willing to pay for any private doctor other than Dr. Powell. However, the holding in In re Robert S., while stating that cost was an insufficient government interest in which to risk the potentially harmful consequences that could result from a less than fully informed decision to administer psychotropic medications, focused on the fact that a

psychologist could not provide a meaningful evaluation. In re Robert S., 213 Ill. 2d at 54. The court specifically stated:

> "We believe the circuit court failed to appreciate the significant difference in expertise between a psychiatrist and a psychologist, and the safeguards that another psychiatrist would have provided in the decisionmaking process.
>
> ***
>
> *** We believe respondent was denied 'a level playing field' and a fundamental right of due process: the opportunity to be heard in a meaningful manner." In re Robert S., 213 Ill. 2d at 54-55.

Furthermore, the court addressed the language of the statute, finding that the legislature used terms such as "physician," "medical expert," and "qualified examiner" interchangeably because it recognized that section 3--804 deals with proceedings for involuntary commitment and involuntary administration of medications. In re Robert S., 213 Ill. 2d at 55. The use of the disjunctive language "apprise[s] circuit courts of the need to appoint an expert appropriate to the proceeding in question," which, in forced-medication proceedings, is an expert qualified to prescribe such medications. In re Robert S., 213 Ill. 2d at 55.

Here, respondent was denied an opportunity to be heard in a meaningful manner when she was denied the right to a second opinion by a physician who could weigh the benefits and risks of her receiving psychotropic medications. Respondent's attorney stated that she could not find a doctor willing to perform the evaluation in the time between the September 23 and the September 30 status hearings, and she requested that the court appoint the Kane County Diagnostic Center. That request, in and of itself, should not be interpreted as a request for an unqualified examiner, nor does the reason

for respondent's counsel's request provide sufficient grounds for denying respondent the right to the proper type of expert. In light of the decision in In re Robert S., which was issued several months prior to respondent's hospital admission, the court should have appointed a psychiatrist, or ensured that the Kane County Diagnostic Center used one, to evaluate respondent and to satisfy her due process rights.

This outcome is consistent with preceding cases that strictly construed procedural safeguards found in the Code when individuals were faced with the prospect of involuntarily receiving psychotropic medications. See In re Leslie H., slip op. at 6-7 (reversing order mandating involuntary administration of psychotropic medications where the respondent's public defender in the underlying criminal case did not receive proper notice of proceedings); In re Janet S., 305 Ill. App. 3d 318, 320-21 (1999) (reversing order mandating involuntary administration of psychotropic medication where petitioner failed to comply with section 2--107.1's requirement that a good-faith attempt be made to determine if the respondent has executed a healthcare power of attorney and stating that because liberty interests are so grave, "we will strictly construe procedural safeguards in favor of the respondent"). A respondent's right to an independent evaluation by a qualified expert is a procedural safeguard requiring similar strict construction.

### III. CONCLUSION

Based on the foregoing reasons, we reverse the order authorizing the involuntary administration of psychotropic medications entered by the circuit court of Kane County.

Reversed.

O'MALLEY and KAPALA, JJ., concur.