# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Katarzyna G.*, 2013 IL App (2d) 120807

---

| | |
|---|---|
| Appellate Court Caption | *In re* KATARZYNA G., Alleged to be a Person Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. Katarzyna G., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0807 |
| Filed | August 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order authorizing the involuntary administration of psychotropic medication to respondent was reversed where the State failed to establish that she lacked the capacity to make a reasoned decision as to whether she would take the medications, because she was not given written notice of the medications in Polish, the only language she understood. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-MH-74; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Veronique Baker, of Guardianship and Advocacy Commission, of Chicago, and Ann Krasuski, of Guardianship and Advocacy Commission, of Hines, for appellant. |
| --- | --- |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Zenoff and Birkett concurred in the judgment and opinion. |

## OPINION

¶ 1    Respondent, Katarzyna G., appeals from an order of the circuit court of Kane County authorizing the involuntary administration of psychotropic medication. At issue is whether, because respondent was not given written notice about the psychotropic medications in Polish, which is the language she understands, the State failed to establish that respondent lacked the capacity to make a reasoned decision about whether to take medication. We answer this question in the affirmative and reverse the order granting the State's petition.

¶ 2    The facts relevant to resolving the issue raised are as follows. Respondent moved to the United States from Poland in 1977, when she was around 25 years old. She worked cleaning houses for many years, owned her own home, and raised a family.

¶ 3    In May 2008, respondent was arrested for aggravated battery to a police officer. She was found not guilty by reason of insanity, was court-ordered to attend outpatient treatment at the John H. Stroger, Jr., Hospital of Cook County, and eventually was involuntarily admitted to the Elgin Mental Health Center (EMHC) in August 2011. The EMHC doctor who treated respondent indicated that respondent suffers from a "delusional disorder persecutory type," which is a psychotic disorder, and that she has so suffered since her arrest. Since respondent was admitted to the EMHC, she has refused to take any kind of medication that could treat her illness.

¶ 4    As a result, respondent's treating doctor petitioned the court for permission to involuntarily administer to respondent various medications that the doctor believed could help treat respondent's mental illness. At the hearing, a Polish-speaking interpreter was present for respondent.[1] When the State asked the doctor whether respondent was given

---

[1]At oral argument on appeal, respondent's counsel, who speaks Polish, stated that she spoke to respondent only in Polish, and the State conceded that respondent spoke Polish and could not

notice about the medications' benefits and side effects, the following exchange was had:

"Q. Doctor, has [respondent] been provided with written materials on the risks and benefits of the medications you wish to prescribe?

A. Yes.

Q. And in your opinion does [respondent] have the capacity to make a reasoned decision about the medications?

A. No, she doesn't because of her mental illness which interferes with her making a reasoned decision.

＊ ＊ ＊

Q. Is [respondent] able to make a reasoned decision about potential benefits and side effects of medication?

A. She–her perceptions interfere with her realizing that she has a mental illness, that there is a mental illness to treat, that there is medication to treat it, and she has difficulty facing the reality of that information. So she would have difficulty making a reasoned decision."

¶ 5    The assistant State's Attorney also inquired about whether a Polish interpreter was present when the doctor would talk to respondent about treatment. That dialogue proceeded as follows:

"Q. How often were you able to talk to [respondent] with a Polish interpreter?

A. Let me see. I would say 10 times.

Q. Ten times over how long a period of time?

A. Since the end of August [2011].

Q. Since the end of August [2011]?

A. Uh-hum.[2]

Q. So about once a month?

A. Yes.

Q. When you went over the benefits and side effects of the medications you're seeking with her was there a Polish interpreter present?

A. There was a Polish interpreter there. I told [respondent] that I wanted to discuss some medications with her, but she would not discuss that at the time. So I gave her the sheets about the medication, and she said she was–at first she didn't want to take them, but then she did take them and she said she would go over them with the interpreter who was coming.

---

understand English.

²The record reflects that respondent's treating doctor spoke directly to respondent when she was admitted but that, after that initial conversation, she spoke with respondent through a Polish interpreter.

Q. Do you know if [respondent] went over them with the interpreter who was coming?

A. No, I don't."

¶ 6 Respondent testified that she has been feeling sad. She indicated that, when she spoke with her doctor about the medications, her doctor said that the "medication [would] make [her] happy, that they were just a few milligrams." Respondent also stated that "[b]efore court [she] received information about the medication."

¶ 7 Based on the evidence presented at the hearing, the trial court granted the State's petition. Respondent never claimed in the trial court that the notice she had received about the medications was defective in that it was not in Polish. Respondent timely appealed.

¶ 8 Before addressing the merits of this appeal, we address three preliminary matters. Specifically, we consider whether the issue is moot, whether respondent forfeited review of the issue, and the procedural posture of the case.

¶ 9 First, we note that the issue raised is moot. However, in cases like this, where the question raised in the appeal is " 'capable of repetition, yet evading review,' " our supreme court has considered moot issues. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998) (quoting *In re A Minor*, 127 Ill. 2d 247, 258 (1989)). Additionally, the public interest exception to the mootness doctrine also provides us with a basis upon which to consider the issue. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004); see also *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1071 (2011) (noting that mootness does not apply to questions about compliance with the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2012)) because such matters involve substantial public concern). Because only one exception must apply for us to bypass mootness and consider the merits of an appeal (see *In re Christopher P.*, 2012 IL App (4th) 100902, ¶ 19), we need not consider whether the third exception to the mootness doctrine also applies.

¶ 10 Second, the record reflects that respondent never raised in the trial court any claim concerning the propriety of the notice she was given about the medication. Ordinarily, the failure to raise an issue in the trial court results in forfeiture of that issue on appeal. See *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988). However, we decline to determine that the issue is forfeited. In its brief, the State did not claim that respondent forfeited review of the issue. As such, the State forfeited any forfeiture argument. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003). We note that at oral argument, in response to this court's questions about whether respondent forfeited review of the issue, the State argued that at the hearing in the trial court respondent forfeited any issue concerning notice. However, the record reflects that respondent took no issue "with regard to notice or timeliness *of today's hearing*." (Emphasis added.) Notice of the hearing is distinguishable from notice about proposed medications' risks and benefits. Additionally, forfeiture is not apt because the issue relates to public and liberty interests relating to the administration of psychotropic drugs upon an unwilling patient. Courts have disregarded forfeiture when the issues raised deal with public and liberty interests. See *In re Janet S.*, 305 Ill. App. 3d 318, 320 (1999); see also *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 21.

¶ 11 Third, regarding the procedural posture of this case, although the *issue* of whether

respondent received sufficient written notice is not forfeited, below there was no hearing on the merits giving the parties and the trial court the opportunity to fully and fairly adjudicate the matter. Thus, we are reviewing the entire record, as well as concessions made by the State on appeal, to determine whether the facts establish that respondent understood written English. Even when an issue is forfeited, the respondent (the proponent of the claimed error) has the burden on review to establish that the evidence supports the claim of error. In this particular instance, we are convinced that the record supports the claim of error.

¶ 12 Turning to the analysis of the merits of the claim of error, the issue raised in this appeal is whether the notice respondent received about the proposed medications enabled her to make a reasoned decision about her treatment. "The State must present clear and convincing evidence that a respondent lacked the capacity to make a reasoned decision about taking the prescribed psychotropic medication." *In re Cathy M.*, 326 Ill. App. 3d 335, 341 (2001). "When reviewing the sufficiency of this evidence, we will reverse the trial court's order if it is against the manifest weight of the evidence." *Id.* "A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly evident, plain, and indisputable." *Id.*

¶ 13 In resolving whether respondent received proper notice, we must examine the applicable sections of the Code. Whether there has been strict compliance with the Code presents a question of law, which is reviewed *de novo*, but the State still bears the burden of presenting clear and convincing evidence of compliance. *Nicholas L.*, 407 Ill. App. 3d at 1072.

¶ 14 In examining the statutes at issue, we are guided by the well-settled rules of statutory construction. The primary rule in construing a statute is to ascertain and give effect to the legislature's intent. *In re R.C.*, 338 Ill. App. 3d 103, 110 (2003). The best indication of the legislature's intent is the language used in the statute at issue. *Id.* When that language is clear and unambiguous, we must give the language its plain and ordinary meaning and cannot resort to extrinsic aids of construction. *Id.*

¶ 15 One of the statutory provisions at issue here is section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2012)). That section outlines when, after specific conditions are met, the State may proceed with the involuntary administration of psychotropic medication. Among other things, that section provides:

"(a-5) Notwithstanding the provisions of Section 2-107 of this Code, psychotropic medication *** may be administered to an adult recipient of services on an inpatient or outpatient basis without the informed consent of the recipient under the following standards:

* * *

(4) Psychotropic medication *** may be administered to the recipient if and only if it has been determined by clear and convincing evidence that all of the following factors are present. ***

* * *

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment." 405 ILCS 5/2-107.1(a-5)(4)(E) (West 2012).

¶ 16    Before a respondent can make a "reasoned decision" about treatment, the respondent must be advised in writing about several things important to making that decision. See *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 13. Section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2012)) delineates what those are. It provides:

"If the services [that the State wishes to provide to a respondent] include the administration of *** psychotropic medication, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." *Id.*

Section 2-102(a-5) of the Code not only ensures that a respondent is fully informed about the risks, benefits, side effects, and alternatives to treatment, but also ensures that the respondent's due process rights are protected. *Nicholas L.*, 407 Ill. App. 3d at 1072. As a result, section 2-102(a-5) of the Code must be strictly complied with, so as to secure the liberty interest that a respondent has in refusing invasive medication. *Id.* Because of this, verbal notice does not constitute compliance with section 2-102(a-5) of the Code, and a respondent cannot waive his right to written notice. *Id.*

¶ 17    These two sections of the Code clearly mandate that a respondent be given written notice about the side effects, risks, benefits, and alternatives to the proposed treatment. If such notice is not given, then the State cannot establish that a respondent lacks the capacity to make a "reasoned decision" about treatment, because the written notice forms the basis upon which such a decision can be made.

¶ 18    The problem presented in this case is that respondent was given written notice but not in Polish. Section 3-204 of the Code (405 ILCS 5/3-204 (West 2012)) outlines when notice must be given to a respondent in a language other than English. Specifically, it states:

"Whenever a statement or explanation is required to be given to a recipient under this Chapter and the recipient does not read or understand English, such statement or explanation shall be provided to him in a language which he understands. *** This section does not apply to copies of petitions and court orders." *Id.*

¶ 19    The plain and ordinary language of section 3-204 of the Code directs that any statement or explanation that must be given to a respondent must be in a language that the respondent understands. The notice referred to in section 2-102(a-5) of the Code certainly qualifies as a statement or explanation that must be given to a respondent. Thus, when the State seeks to involuntarily administer psychotropic medication, the respondent must first be informed in writing, in a language he or she understands, about the risks, benefits, and side effects of the medication, and the alternatives to it. When notice is not so given, the State cannot establish by clear and convincing evidence that the respondent is unable to make a reasoned decision about the medication. If the State cannot establish this element, then the State's petition seeking to involuntarily administer psychotropic medication necessarily must fail. See *In re Louis S.*, 361 Ill. App. 3d 774, 780 (2005) (before a respondent can make a reasoned decision about medication, the State must inform the respondent in writing about the various aspects of treatment, and this notice constitutes an element that the State must establish before the court may order the involuntary administration of psychotropic

medication).

¶ 20    Here, a review of the record reveals that every time respondent appeared in court she was assisted by a Polish interpreter. Likewise, except for the first time respondent met with her doctor, she always spoke with her doctor through a Polish interpreter. Although the record indicates that respondent came to this country as a young woman, owned a home here, and raised a family here, those facts do not necessarily support a conclusion that respondent understands English, especially in light of the noted facts to the contrary and the fact that in many parts of this country there are large communities where people speak exclusively or primarily their native language and not English. Because the evidence showed that respondent could not understand English, the notice in English that she was given was not sufficient to comply with the Code. Accordingly, the State essentially conceded that it failed to establish that respondent lacked the capacity to make a reasoned decision when it conceded that she understood Polish and not English. The concession is well grounded by the facts in the record establishing how respondent communicated solely in Polish.

¶ 21    We find support for our position in several other cases that have addressed the need to notify a respondent in writing of the various things related to making a reasoned decision about whether to take psychotropic medication. Courts have found that, not only will the failure to give any written notice warrant reversing an order granting the State's petition to involuntarily administer psychotropic medication (see *In re Richard C.*, 329 Ill. App. 3d 1090, 1095-96 (2002)), but so will the failure to give written notice about alternatives to treatment (see *Nicholas L.*, 407 Ill. App. 3d at 1071-72) and about the risks, benefits, and potential side effects of treatment (see *In re John R.*, 339 Ill. App. 3d 778, 784-85 (2003)). Failing to provide a respondent with notice in a language he or she understands is tantamount to failing to provide a respondent with any type of notice or omitting from that notice any of the things that the notice is designed to convey. At the core of all of these circumstances is the denial of the respondent's right to make a reasoned decision about whether to take medication, and, as noted, it is well settled that, when that right is denied, a petition to involuntarily administer psychotropic medication must likewise be denied. *Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 18.

¶ 22    The State argues that the notice in English was sufficient to comply with the Code, because respondent was afforded the services of a Polish interpreter who could translate the notice for her. The State then claims that, even if such circumstances were not sufficient to comply with the Code, any error was harmless. We disagree.

¶ 23    First, the plain language of section 2-102(a-5) of the Code mandates that a respondent be given notice "in writing." 405 ILCS 5/2-102(a-5) (West 2012). "[I]n writing" necessarily means that verbal notice is insufficient. See *Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 14; see also *John R.*, 339 Ill. App. 3d at 783-84. The fact that respondent could have received verbal notice via a translation of the written notice is immaterial. The Code, which provides that a respondent be given written notice in a language he or she understands, requires strict compliance. See *John R.*, 339 Ill. App. 3d at 783-84. Because strict compliance is required, a verbal translation of the written notice is insufficient. The State's claim that giving respondent written notice and the services of a Polish interpreter complied with respondent's wishes is likewise irrelevant. Not only must a respondent be given written notice in a

-7-

language he or she understands, but a respondent cannot waive this right to written notice. See, *e.g.*, *Nicholas L.*, 407 Ill. App. 3d at 1072 ("[T]he right to receive written notification under section 2-102(a-5) cannot be waived by a respondent.").

¶ 24    Second, where written notice is required, this court has found that a harmless-error analysis has no application. *Id.* (noting that the right to written notice is not subject to harmless error); *Richard C.*, 329 Ill. App. 3d at 1095 ("[T]his right to written notification is not subject to a harmless error analysis."). Although appellate courts from other districts might have reached a different conclusion, we are not bound by their decisions. See *State Farm Fire & Casualty Co. v. Yapejin*, 152 Ill. 2d 533, 539 (1992) (noting that an appellate court is not bound by the decisions of other appellate courts). We see no reason, under the facts presented here, to depart from our position that a harmless-error analysis has no application to this issue.

¶ 25    For these reasons, the judgment of the circuit court of Kane County is reversed.

¶ 26    Reversed.